[No. 4802.]

## AGNES MAWSON *v.* RICHARD MAWSON AND ELIZABETH BIRKS.

SETTING APART HOMESTEAD BY PROBATE COURT.—The amendments of 1874, made to the Code of Civil Procedure, do not prevent the Probate Court, in case of the death of the husband, or wife, from setting apart a homestead for the use of the survivor or the minor children, if none had been selected and recorded before the death.

IDEM.—If such amendments repeal the sections providing for the manner in which the homestead is to be set apart, the court, under section 187 of the Code of Civil Procedure, may adopt a method of doing so.

IDEM.—Such homestead may be set apart out of the separate estate of the deceased husband.

IN WHOM HOMESTEAD VESTS.—If the Probate Court, after the death of the husband, sets apart a homestead out of the separate estate of the decedent, it vests in the surviving wife if there are no minor children; but if the decedent left a minor child or children, one-half vests in the widow, and the other half in the child, or in the children in equal proportions.

IDEM.—If a homestead be selected while the husband and wife are both living, out of the separate property of either, it vests, on the death of the person from whose property it was selected, in his or her heirs, subject to the power of the court to assign it for a limited period to the family of the decedent.

APPEAL from the Probate Court, County of Colusa.

William Mawson died, intestate, on the 3d day of October, 1874, leaving Agnes Mawson his widow, to whom he had been married in 1869. The deceased left real estate which had been his separate property. There was no issue

of the marriage. The widow applied to the Probate Court, when the estate was in the course of administration, to have part of the real estate set apart to her as a homestead, no homestead having been selected during the lifetime of the decedent. The deceased left two children by a former marriage, Richard Mawson and Elizabeth Birks, and they contested the application. The court below set apart the homestead for the use of the surviving widow, and the contestants appealed.

The other facts are stated in the opinion.

*J. L. Wilbur and A. L. Hart,* for the Appellants.

The right to select in a "manner" stated, makes the "manner" the measure of the power conferred upon the court, and when the sections providing the course to be pursued were repealed, the court ceased to have any authority to make any order in the premises. (*Cowell* v. *Martin,* 43 Cal. 605.)

It will not be denied that whatever powers the Probate Court may have in the premises, it derives them from the sections of the Code referred to, and that the right to set apart a homestead in this class of cases had no existence at the common law. Section 1465, therefore, confers upon the court a limited power which it could not before exercise; it invests the court with authority to designate and admeasure a homestead in a certain "manner." To say, therefore, that the court might exercise the power conferred in any other "manner" would be to nullify one of the plain provisions of the section, and to invest the judge with sufficient legislative authority to enable him to prescribe the remedy which should be pursued in the enforcement of a purely statutory right. It is a rule of statutory construction that where both the right and the remedy are given by statute, that remedy alone can be pursued. (*People* v. *Craycrole,* 2 Cal. 243; *Ward* v. *Severance,* 7 Cal. 126; *McMinn* v. *Bliss,* 31 Cal. 122; *Aleny* v. *Harris,* 5 Johns. R. 175; *Elder* v. *Bemis,* 2 Met. 599.)

It is also a settled rule of construction that, where by a statute a new right is given and a specific remedy provided,

or a new power is conferred and the means of executing it is provided by statute, the power can be executed and the right vindicated in no other way than that prescribed by the statute. (Sedgwick on the Construction of Statutes and Constitutional Law, 243; *City of Boston* v. *Shaw*, 1 Met. 130.)

*S. T. Kirk*, for the Respondent.

Section 1465 gave the widow the right to a homestead in cases like the present, and also conferred on the Probate Court power to set it aside to her.

The repealed sections merely provided the manner in which the court should exercise its power. They did not give a remedy in any sense. They furnished the manner of the exercise of a remedy.

In 1866 the Probate Act, section 121, gave the court power to set aside a homestead in such cases, but provided no method of procedure, though section 124 of the same act defined the character and extent of the homestead; yet under the law as it then stood it was held in the *Estate of Busse* (35 Cal. 310) that the court could set aside a homestead; and in that case it was from the husband's property. The power of the Probate Court to set aside a homestead in cases like the one at bar is also recognized in *Schadde* v. *Hept* (45 Cal. 433); also in *Estate of Ballentine* (45 Cal. 696).

By the COURT:

The Probate Court set apart to the widow a homestead out of the separate estate of the deceased husband, none having been selected and recorded during the lifetime of the latter. The heirs at law appeal, and contend, first, that under the Code, as amended in 1874, the Probate Court has no power to set aside a homestead to the widow where none was selected in the lifetime of the husband; and second, that if the power exists at all, it is limited to the selection of a homestead from the community property, and has no application to the separate estate of the husband. It is not denied that section 1465 of the Code of Civil Procedure in terms authorizes the Probate Court to set aside a homestead, if none had been previously selected; but the same

section adds, "In the manner provided in article two of this chapter." Article two of that chapter relates to the setting apart of the homestead by the Probate Court when one had been selected in the lifetime of the husband, and prescribes the method by which it is to be set apart. By the amendments of 1874 the method was somewhat modified, and the former provisions on that subject were repealed. The argument is that the particular method originally provided, having been suspended or repealed by the amendments of 1874, the Probate Court has no longer the power, under section 1465, to set apart the homestead in the manner provided in article two of that chapter, the manner there provided having been abrogated; and that the manner being the measure of the power, the power itself ceases when it can no longer be exercised in that manner. But if it be true that the "manner" originally provided has been abrogated in an absolute sense, and not merely modified by the amendments of 1874, the result would be that by section 1465 power is conferred on the Probate Court to set apart a homestead, but there is no "manner" provided by law in which it is to be done. In that event, section 187 of the Code of Civil Procedure furnishes the remedy by providing that "when jurisdiction is, by this code or any other statute, conferred on a court or judicial officer, all the means *necessary* to carry it into effect are also given, and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." The court, therefore, had the power to set apart the homestead, and we are of opinion that it can be set apart out of the separate estate of the husband. Section 1465 provides in terms, that it may be set apart "out of the real estate belonging to the decedent;" and section 1468 provides that when set apart, "if the decedent left a widow or surviving husband, and no minor child, such property is the property of the widow or surviving husband," but if there be minor children, they are to take a specified proportion of it. It is true that in dealing with homesteads selected and recorded

during the lifetime of the decedent, section 1474 provides that if the homestead claim was recorded while both the husband and wife were living, and "was selected from the community property, it vests, on the death of the husband or wife, absolutely in the survivor. If the homestead was selected from the separate property of either husband or wife, it vests, on the death of the person from whose property it was selected, in his or her heirs, subject to the power of the Probate Court to assign it for a limited period to the family of the decedent." Section 1265 of the Civil Code is substantially to the same effect. It is somewhat difficult to understand upon what ground the Legislature discriminates between homesteads selected and recorded in the lifetime of the parties and those to be set apart by the Probate Court out of the separate estate of the deceased. But these provisions are in no respect inconsistent with each other. The language is incapable of any other interpretation than that if a homestead be set apart by the Probate Court out of the separate estate of the deceased husband, it shall belong to the widow and minor children, if there be any; while, on the other hand, it is equally clear that if the homestead be selected and recorded while the husband and wife are both living, out of the separate estate of either, "it vests, on the death of the person from whose property it was selected, in his or her heirs, subject to the power of the Probate Court to assign it for a limited period to the family of the decedent." It is our duty to administer the statute law as we find it, and not to account for its incongruities.

Judgment and order affirmed.

Mr. Chief Justice WALLACE concurred specially in the judgment.