[L. A. No. 3294. Department One.—December 18, 1912.]

## In the Matter of the Estate of ROBERT NICCOLLS, Deceased.

ESTATES OF DECEASED PERSONS—HOMESTEAD FROM SEPARATE PROPERTY MUST BE FOR LIMITED PERIOD.—Under section 1468 of the Code of Civil Procedure, as amended in 1881, where no homestead has been selected during the lifetime of the decedent, the court in probate, in setting apart a homestead from the separate property of the decedent, can set it apart for a limited period only.

ID.—COMMUNITY PROPERTY—PRESUMPTION—EVIDENCE TO OVERCOME—BURDEN OF PROOF.—All property acquired by either spouse during the existence of the marriage is presumed to be community property, and the burden of overcoming the presumption by clear and satisfactory evidence rests upon the party claiming that the property is separate.

ID.—CHARACTER OF PROPERTY REMOVED FROM ANOTHER STATE.—If a husband and wife acquire personal property in one state and then remove with the same into a state in which the community law prevails, the law of the state where they lived when the property was acquired will govern as to whether it be separate or community property.

ID.—PROPERTY ACCUMULATED DURING MARRIAGE IN ILLINOIS—NOT COMMUNITY PROPERTY IN CALIFORNIA.—There is not in the state of Illinois such a thing as community property. Consequently, property accumulated in that state by a man and wife during their marriage, and subsequently brought into the state of California, did not, nor did any property for which it was there exchanged, become community property in the latter state.

ID.—ORDER SETTING APART HOMESTEAD ABSOLUTELY—ERRONEOUS FINDING OF COMMUNITY PROPERTY—EVIDENCE OF SEPARATE PROPERTY OF WIFE.—An order in probate setting apart a homestead to and vesting it absolutely in the surviving wife of the decedent, which is based on an erroneous finding that the property set apart was community property, cannot be upheld on the theory that the evidence showed that the property was the separate property of the wife.

ID.—PROCEEDING TO SET APART HOMESTEAD—JURISDICTION—TITLE AND ADVERSE CLAIMS NOT INVOLVED.—In a proceeding to set apart a homestead from the estate of a decedent, the court has no jurisdiction to determine the title to the property, or the validity of any claim of title adverse to that of the estate. Such a proceeding is based on the theory that the property sought to be set aside is a part of the estate of the decedent, and any title the applicant might claim in it as separate property is not involved and cannot be adjudicated.

APPEAL from an order of the Superior Court of San Diego County setting apart a homestead from the estate of a deceased person, and from an order refusing a new trial. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

Mills & O'Farrell, W. J. Mossholder, and Marks P. Mossholder, for Appellants.

Luce & Luce, for Respondent.

SLOSS, J.—Robert Niccolls, a resident of the county of San Diego, died intestate, leaving property in that county

and elsewhere. His heirs were his widow, Frances Niccolls, and a number of nephews and nieces. Upon the nomination of the widow, W. R. Rogers was appointed administrator of the estate.

Included in the estate was a lot, with a dwelling thereon, in the city of San Diego. The widow petitioned to have this property set apart to her as a homestead. Objections were filed by various other heirs. After a hearing, the court made its order setting said property apart as a homestead and vesting it absolutely in the widow. The contesting heirs appeal from the order and from a subsequent order denying their motion for a new trial.

The order setting apart the homestead contained findings that no homestead had been selected and recorded during the lifetime of the decedent, and that the property involved was community property. The latter finding is attacked as unsupported by the evidence. That the finding is material is not to be questioned. Where no homestead has been selected during the lifetime of the decedent, the court in probate, in setting apart a homestead from the separate property of the decedent, can set it apart for a limited period only. Under the provisions of the Code of Civil Procedure, as originally enacted, the power of the court was not so restricted. (*Mawson* v. *Mawson*, 50 Cal. 539). Section 1468 was, however, amended in 1881 [Stats. 1881, p. 8], by the addition of this clause: "If the property set apart be a homestead, selected from the separate property of the deceased, the court can only set it apart for a limited period, to be designated in the order, and the title vests in the heirs of the deceased, subject to such order." The added provision might seem, at first glance, to refer to the case of property which had been selected as a homestead during the lifetime of the decedent. It is, however, settled by the decisions of this court that this is not its proper construction. The new clause applies to homesteads set apart in probate proceedings, no homestead having been theretofore selected. Its effect, as to such cases, is to alter the rule declared in *Mawson* v. *Mawson*, 50 Cal. 539, and to take from the court the power to assign a homestead absolutely except where the property set apart is community property. (*In re Schmidt*, 94 Cal. 334, [29 Pac. 714]; *Lord* v. *Lord*, 65 Cal. 84, [3 Pac. 96]; *In re Noah*, 73

Cal. 590, [2 Am. St. Rep. 834, 15 Pac. 290]; *In re Lahiff*, 86 Cal. 151, [24 Pac. 850].)

We think the appellants are clearly right in their contention that the finding of the community character of the property in question is not supported by the evidence. It is undoubtedly the rule that all property acquired by either spouse during the existence of the marriage is presumed to be community property, and that the burden of overcoming the presumption by clear and satisfactory evidence rests upon the party claiming that the property is separate. (*Smith* v. *Smith*, 12 Cal. 216; *Althof* v. *Conheim*, 38 Cal. 230, [99 Am. Dec. 363]; *Davis* v. *Green*, 122 Cal. 364, [55 Pac. 9].) Here, however, the evidence regarding the acquisition of the property was without substantial conflict, and giving it the strongest possible construction in favor of the respondent, it pointed indisputably to the conclusion that the house and lot in controversy were not community property.

Robert Niccolls, the decedent, and Frances Niccolls, the respondent, were married in Pennsylvania in 1854. Shortly after their marriage they took up their abode in Bloomington, Illinois, and resided there until 1881 or 1882, when they moved to San Diego, in this state, where they remained until the husband's death. Testimony with respect to their property before and after marriage was given by Mrs. Niccolls. Concerning some details there was more or less uncertainty in her testimony. This was due, no doubt, as the witness herself said, to a slight impairment of memory—a condition which was not surprising in view of her advanced age and the length of time that had elapsed since the events of which she was speaking. But, taking her testimony in its aspect most favorable to her, it appears that, at the time of the marriage, Mrs. Niccolls owned real estate in the state of Illinois, of the value of five thousand dollars. Her husband also owned some property. With the proceeds of the property of both, the husband purchased land in Illinois. From 1854 to 1860 or 1861, the husband, who was a physician, practiced his profession. From 1861 to 1865, the period of the Civil War, he was attached to the forces of the United States as an army surgeon, in which capacity he earned a fixed salary. After the war, he resumed his residence in Bloomington. He did not again engage in medical practice, but

occupied himself with buying and selling land, and loaning money, generally on mortgage security. The capital employed in these ventures was made up of the proceeds of the property which his wife had owned before marriage, together with the property which he had owned and his subsequent earnings. No distinction was made between the husband's property and that belonging to his wife. All was handled and controlled by the husband. As Mrs. Niccolls expressed it, "everything was his and everything was mine. . . . I expected him to do what was right." When the couple moved to California, Dr. Niccolls brought with him a part of the accumulations he had thus made, and with this he acquired the property in controversy and a ranch in San Diego County. He never practiced his profession in California, nor did he follow any other occupation in this state. The character of the property owned by himself and his wife did not, therefore, change after they had taken up their residence in San Diego.

The question, then, is what, according to the law of the state of Illinois, was the character of the property owned and acquired by Dr. and Mrs. Niccolls in that state, and by them brought to California. "If a husband and wife acquire personal property in one state and then remove with the same into a state in which the community law prevails, the law of the state where they lived when the property was acquired will govern as to whether it be separate or community property." (Ballinger on Community Property, sec. 47; *Kreamer* v. *Kreamer*, 52 Cal. 302; *Estate of Burrows*, 136 Cal. 113, [68 Pac. 488].) The record before us contains testimony, which is uncontradicted, that "there is not in the state of Illinois, by statute or as common law, any such thing as community property, whereby the husband and wife both have a community interest in property accumulated during the marriage relation." It follows that the property accumulated during the marriage, whatever might have been its character if the parties had acquired it while domiciled in California, was not community property in Illinois. Consequently neither it, nor any property for which it was exchanged, became community property in this state. It was either the property (separate) of the husband, or of the wife, or it belonged to both in proportion to their respective

contributions thereto.   But neither of these conditions justi-
fies the finding that it was community property.

It is claimed by the respondent that the accumulations of
the spouses were the product of the property owned by her
before marriage, and thus constituted her separate property.
From this premise she argues that she was entitled to the
house and lot in any event, and that the appellants are not
injured by the order which merely sets apart to her her own
property.   There are two answers to this position.   In the
first place, the evidence does not compel (if, indeed, it would
permit) the conclusion that all the property was the separate
property of the wife.   The court has not found that it was.
On the contrary, the finding is that it was community prop-
erty, and we cannot support the order based on this finding
by supposing that the court might, or would, have found
that it was separate property of the wife.   But, beyond this,
a finding that the house and lot were separate property of
the wife would not have justified the order setting apart a
homestead.   In making such order, the court is dealing only
with the property of the estate.   It has no jurisdiction, in a
proceeding of this character, to determine the title to the
property, or the validity of any claim of title adverse to that
of the estate.   (*Estate of Burton*, 64 Cal. 428, [1 Pac. 702] ;
*Estate of Groome*, 94 Cal. 69, [29 Pac. 487] ; *Estate of Kim-
berly*, 97 Cal. 281, [32 Pac. 234].)   "It determines, merely,
that the parcel named is selected from the estate of the de-
ceased (whatever his interest therein may have been) and who
are the persons entitled to the benefit of the homestead selec-
tion. . . . Title to real estate cannot be tried in such proceed-
ing." (*Estate of Burton*, 64 Cal. 428, [1 Pac. 702].)   The
application of the respondent was, therefore, necessarily
based upon the theory that the house and lot in question was
a part of the estate of the decedent.   She was invoking the
power of the court to set apart to her the interest which the
decedent had owned—whether as community or his separate
estate—in the property.   Any title that she might claim in
it as her separate property was not involved and could not be
adjudicated.

The appellants do not object to the assignment of this
property to the widow as a homestead.   They complain
merely of the provision that sets it apart to her absolutely.

They suggest that the order be modified so as to limit the homestead right to the life of respondent. This concession obviates· the necessity of a new trial, and we think the course suggested a proper one.

The order setting apart the homestead is reversed, with directions to the court below to modify the same by striking therefrom in the paragraph preceding the description of the property the words "and is hereby vested absolutely in said widow," and substituting therefor the words "during her lifetime." The order denying a new trial is affirmed.

Shaw, J., and Angellotti, J., concurred.