[Civ. No. 8215. First Appellate District, Division Two.—February 27, 1932.]

ADELIA F. LATTERNER, Appellant, v. FREDERICK HENRY LATTERNER, Respondent.

C. A. Stice for Appellant.

W. R. Law for Respondent.

SPENCE, J.—An interlocutory decree of divorce was entered in favor of plaintiff and she was awarded alimony in the sum of $250 per month. No appeal was taken by either party from the portions of the decree above mentioned, but plaintiff appeals from the remaining portions of the decree wherein it was adjudged that there was no community property, that certain real property therein described was the separate property of defendant and that the award for alimony should not be a lien upon said real property.

The parties were married in Vermont in 1903. Immediately after their marriage, they took up their residence in Boston, Massachusetts, where defendant practiced medicine until 1906. In that year they moved to Hartford, Connecticut, and defendant practiced medicine in that city until 1908. In the latter part of 1908, they moved to Los Angeles, California, and continuously resided in this state up to the time of their separation in 1923. The real property in controversy consisted of two adjoining lots in the city of Los Angeles which were purchased by defendant in 1912 and 1920 respectively. Although it was stipulated that all of the property had been earned and acquired since the marriage, there was a conflict in the testimony regarding the amount of property which defendant had earned and ac-

quired before coming to California. The uncontradicted testimony showed that shortly after his arrival defendant deposited a sum in excess of $19,000 in a Los Angeles bank and defendant's testimony showed that through his earnings and investments before coming to this state he had acquired assets represented by cash and securities which had a value of approximately $50,000 at the time he arrived here. Defendant further testified that no part of the purchase price for the real property was paid from money earned in California but that said property was purchased with the assets which he had brought to this state. The purchase price for the lot acquired in 1912 was $14,000, but our attention has not been called to the amount paid for the adjoining lot purchased in 1920. The trial court found ''that all of the funds used in the purchase of said property and in making improvements thereon were funds brought by the defendant to California, from earnings and accumulations made by defendant in the states of Massachusetts and Connecticut'', and that ''during all of the said time said states of Massachusetts and Connecticut were common-law states and the law of community property did not obtain therein''. Upon these findings the trial court concluded that there was no community property and that said real property was the separate property of defendant.

In attacking the portions of the decree appealed from appellant raises several points. It is contended that respondent failed to overcome the presumption arising under section 164 of the Civil Code that the property was community property. We find no merit in this contention for there was ample evidence to sustain the finding that the real property involved was purchased with the separate property of respondent acquired in Massachusetts and Connecticut while a resident of said states and brought with him to this state in 1908. It is well settled that the property acquired by respondent during marriage while a resident of another state, under whose laws the property was his separate property, and brought to this state prior to the more recent amendments to our community property laws, remained his separate property after reaching this state and that any property acquired by purchase in this state with such separate property likewise became his separate property. (*Estate of Drishaus,* 199 Cal. 369 [249 Pac. 515];

*Estate of Frees*, 187 Cal. 150 [201 Pac. 112]; *Estate of Arms*, 186 Cal. 554 [199 Pac. 1053]; *Estate of Boselly*, 178 Cal. 715 [175 Pac. 4]; *Estate of Warner*, 167 Cal. 686 [140 Pac. 583]; *Estate of Niccolls*, 164 Cal. 368 [129 Pac. 278]; *Estate of Burrows*, 136 Cal. 113 [68 Pac. 488]; *Kraemer* v. *Kraemer*, 52 Cal. 302.) Furthermore the vested interest which respondent had in such separate property was unaffected by the subsequent amendments to our community property laws. (*Estate of Drishaus, supra.*)

It is further contended that the parties "acquired their property in the east with the intention of investing in California and under the law of intended domicile the property in California is community". Appellant concedes that there are no decisions in this state supporting this contention but cites McKay on Community Property, section 622, and authorities from other jurisdictions. Assuming without deciding that the so-called "law of the intended domicile" prevails in this state, we are still of the opinion that there is no merit in appellant's contention. In McKay on Community Property, section 622, cited by appellant, it is said, "While the law of an intended domicile can have no effect as law until the persons involved or their property come within its jurisdiction, yet if persons marry with the intent to remove to a given state, and do so remove within a time when it may be said that their original intention is still in force, marital rights in property acquired during this period are determined by the law of the intended domicile." The issue of intention was raised in the trial court and there were findings made "that said marriage was not entered into with any intent to remove to California nor was any of said property accumulated in Connecticut or Massachusetts with intent to remove same or any part thereof to California". The evidence offered by respondent showed that in 1908 the parties decided to come to California while visiting some hot springs in Arkansas for appellant's health and that they had not intended to move to this state prior to that time. The evidence, though conflicting, amply supports the findings of the trial court and, even assuming that "the law of the intended domicile" prevails in California, the facts as found by the trial court would not permit of its application in the present case.

■ Appellant further contends that "if the property is separate, the distribution of it should be governed by the laws of Connecticut and Massachusetts under the doctrine of conflict of laws". Appellant cites no authority in support of this contention and we know of none. In our opinion, where the parties are residents of this state and the property in question has the status of separate property, the disposition of said property upon the dissolution of the marital union in this state by death or divorce is governed by the laws of this state relating to the disposition of separate property and not by the laws of one or more sister states in which it may have been originally acquired.

■ Lastly appellant contends "that in any event if she is allowed nothing but alimony, she should be secured by the court declaring her claims for payments to be a lien against the property". The provisions of section 140 of the Civil Code relating to security in such cases are permissive and not mandatory in their terms. It was within the discretion of the trial court to make or not to make provision for securing the alimony payments. Under the circumstances disclosed by the evidence it does not appear that the trial court abused its discretion in refusing to make the award a lien upon respondent's property.

The portions of the interlocutory decree appealed from are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.