[Civ. No. 11679.   First Dist., Div. Two.—May 27, 1941.]

KARSTEN SONNICKSEN et al., Plaintiffs and Appellants, v. MARTHA SONNICKSEN, as Executrix, etc., Defendant and Appellant.

48

Kenneth R. McDougall and J. W. Coleberd for Plaintiffs and Appellants.

Paul A. McCarthy and Lakin & Leve for Defendant and Appellant.

NOURSE, P. J.—Two appeals are involved in the instant case, one being an appeal by the defendant from a decree quieting title in the plaintiffs to certain described property, the other being an appeal by the plaintiffs from a portion of the decree which excepted from its operation property

which had been set aside to the defendant as a homestead in a probate proceeding. The complaint is framed as one to quiet title but in addition to the usual prayer in that respect it prays for a decree that the defendant holds all the described property in trust for plaintiffs; that she be required to convey the same to the plaintiffs; and for further relief. The decree quieted plaintiffs' title as prayed (except as to the homestead) and ordered plaintiffs put in possession as owners in fee simple. The appeal from the judgment is on the judgment roll alone.

The facts upon which the findings of fact and conclusions of law are based are not in substantial dispute. On March 31, 1930, Andrew and Else Sonnicksen, parents of the four plaintiffs, executed a written agreement of separation as husband and wife reciting that they would thereafter live apart, the wife having the right to occupy the family home and the husband the right to manage the property, which was therein declared to be community property of the parties, and which it was agreed should be held by him until certain portions of it could be sold at a reasonable price, but not without the consent of both parties. Paragraph nine of this agreement, which is the important provision in this litigation, read as follows: "Each of said parties hereby agrees that in consideration of the premises that upon the death of the first of them that all of the property of either or both of them will go to the survivor, and upon the death of such survivor will go to the four children of these parties, share and share alike, or in the event of the death of any of them prior to the death of such survivor, to the heirs at law of such deceased children, and both of said parties agree to make a will which will carry out the above provision and which shall provide that upon the death of the first of them all of the property of either or both of them will go to the survivor and that upon the death of such survivor will go to the four children of these parties share and share alike, or in the event of the death of any of them prior to the death of such survivor, to the heirs at law of such deceased children.

"This provision is irrevocable, except upon the written consent of both parties."

Here it should be noted that this contract to make mutual wills does not seem to have been complied with by either party. In the absence of the transcript of the proceeding,

and in the absence of a bill of exceptions we may look only to the findings of fact and from these it appears that on October 16, 1932, Andrew executed a will devising to the defendant "such part of my estate as I may be legally or lawfully entitled to bequeath or devise to her" and expressly revoking his will of February 14, 1931. Also from the findings of fact it appears that Else executed a will on February 13, 1930, devising all her interest in the property to the plaintiffs herein.

Else died on December 31, 1930, and on January 1, 1931, Andrew entered into a written agreement with the defendant whereby he agreed if she would nurse him he would convey his home and the adjoining one-half lot to her at the moment before his death. The will of Else executed before the property settlement agreement was admitted to probate on February 1, 1931, and Karsten Sonnicksen, one of the plaintiffs herein, qualified as executor. On June 17, 1931, Andrew was awarded a decree in a suit against the executor, the judgment decreeing that Andrew was the sole owner of the property described in the property settlement agreement, that Karsten as executor of Else's will had no title to the property as executor, or on behalf of himself or other heirs of the decedent. This judgment became final.

On June 23, 1932, Andrew married Martha Sullivan who is the defendant herein. This marriage was contracted by Martha with full knowledge of the property settlement agreement which had been made between Andrew and his former wife. Andrew died on May 7, 1935, and his will was admitted to probate. On May 28, 1935, the court ordered Martha a family allowance, which was later revoked, and on December 2, 1935, a probate homestead was awarded to her for her life. During the pendency of the probate proceeding Martha, as executrix of the estate of Andrew, commenced an action against the four plaintiffs herein presumably under section 850 of the Probate Code seeking an order directing a conveyance of the real property mentioned in the agreement of January 1, 1931, between herself and Andrew. After the probate court had denied her petition, Martha filed a claim against the estate based upon the written agreement and asking similar relief. Upon the rejection of this claim she then filed an action against the estate for the same purpose. From the order denying her petition for a conveyance and

from the judgment denying her relief upon the rejected claim, she appealed and both the order and the judgment were affirmed by this court. (*Estate of Sonnicksen,* 23 Cal. App. (2d) 475 [73 Pac. (2d) 643]; *Sonnicksen* v. *Estate of Sonnicksen, Idem,* p. 480 [73 Pac. (2d) 646].)

On July 11, 1935, the plaintiffs commenced the instant action which we have heretofore said the parties treated as one to quiet title to the property covered in the settlement agreement. The action was instituted against Martha individually and in her capacity as an executrix of Andrew's estate. Findings of fact in accord with what we have heretofore stated were made and the court drew the conclusions of law that through the property settlement agreement Andrew and Else became joint tenants of life estates in the property; that, from the time of the execution of the contract, the plaintiffs became equitable remaindermen in the property contingent upon their survival of the contracting parties; and that upon the death of both Andrew and Else the plaintiffs became owners of vested equitable estates, subject to Martha's life interest in the probate homestead. On these findings and conclusions a decree was entered adjudging that the plaintiffs were owners of the personal property and owners in fee simple of the land, subject to the probate homestead, and that the defendant had no title or interest therein except as stated. All adverse claims of defendant were adjudged invalid and plaintiffs were ordered into possession.

Counsel for the respective parties are far apart upon the issues involved in the appeal. The appellant attacks the conclusions of law made by the trial court that by and through the separation contract of March 31, 1930, the respondents became owners of equitable remainders in the property included in the contract contingent only upon their surviving their parents. She also attacks the conclusion that through the same contract the fee simple title of the parents was converted into a life estate for the benefit of the survivor. The respondents do not agree that these are the vital questions involved, but contend that the real question is whether the separation agreement created in them remainder estates which they were entitled to take on the death of Andrew. We do not deem it necessary to discuss any of these questions in the manner presented. It is sufficient to state that the

case is in equity and that the appeal being taken on the judgment roll alone without a bill of exceptions and without a transcript of the evidence, the primary question before us on this appeal is whether the findings and the decree are within the equities. ■ It is a cardinal rule of equity practice that under a prayer for general relief the court may grant any relief conformable to the case made by the pleadings and the evidence, although it may not be the relief asked by a special prayer. This rule is based upon the fundamental principle of chancery that a court of equity will endeavor to finally dispose of litigation so as to preclude further litigation between the same parties and upon the same subject matter. (19 Am. Jur. 281, 282.) It is also an accepted rule that when a party comes into a court of equity pleading facts which entitle him to some equitable relief, the court will assume jurisdiction of the entire controversy, notwithstanding the form of the pleading, and will disregard the specific prayers in order to grant the relief which the proof warrants as within the equities of the entire case. (*Zellner* v. *Wassman,* 184 Cal. 80 [193 Pac. 84].)

In view of these principles we may look at the equities of the case presented on this appeal. ■ The separation agreement of March 31, 1930, was a valid contract specially authorized by section 159 of the Civil Code. It was in writing and made a complete disposition of the property interests of the husband and wife so far as they themselves were concerned. It was not rescinded, cancelled or modified and was in full force and effect at the time of the death of the wife on December 31, 1930. It was a contract made for the benefit of the surviving children of the contracting parties and thus one which they had the right to enforce. (Civ. Code, sec. 1559.) ■ Hence, both husband and wife each became a trustee one for the other and both for the heirs named as beneficiaries in the contract. (Code Civ. Proc., sec. 369.) When Else died, Andrew took all the property named in the contract as survivor, but also as trustee for the beneficiaries named in the contract, and when Andrew died his legal representatives succeeded to the trusteeship. ■ Now when a condition of this kind arises the usual procedure is a suit in equity to establish the trust, whether voluntary or involuntary, resulting or constructive, and to have it adjudged that the party holding as such trustee should deliver both title and possession to the

beneficiaries, and should be foreclosed and enjoined from asserting any title adverse to the beneficiaries. When the contract as here is an agreement to make mutual wills which cannot be specifically enforced, because in the lifetime of a party all testamentary papers are in their nature revocable and after his death it is no longer possible for him to make a will, courts of equity have adopted a remedy equivalent to a specific performance by compelling those on whom the legal title has descended to convey to the beneficiaries under the contract upon the ground that they hold as trustees for the beneficiaries. (*Burdine* v. *Burdine's Executor,* 98 Va. 515 [36 S. E. 992, 993, 81 Am. St. Rep. 741].) This practice has developed what is termed "the *quasi*-specific performance" theory. It was approved in *Notten* v. *Mensing,* 3 Cal. (2d) 469, 473 [45 Pac. (2d) 198]. That was a case in which husband and wife were alleged to have entered into an oral contract whereby each agreed to make mutual and respective wills providing that all their property should go to the survivor and upon the death of the survivor to certain designated relatives including the plaintiffs in that action. It was alleged that wills were executed in accordance with this agreement, that before they were revoked the husband died, that the wife accepted the full benefits of the husband's will, and that after the death of the husband she revoked her will and executed a new will omitting to provide for the plaintiffs. The case was one seeking to enforce a constructive trust on certain property devised to the defendants by the will of the wife contrary to the terms of the alleged oral agreement. The case came to the Supreme Court on an order sustaining a demurrer to the complaint. In holding that the complaint stated a good cause of action the Supreme Court used the following language (p. 473) : "It is clear that a will, even a mutual will, is ambulatory until death and hence may be revoked, notwithstanding an agreement not to revoke. (Sec. 23, Probate Code; *Estate of Rolls,* 193 Cal. 594 [226 Pac. 608].) However, even though such a mutual will may be revoked, where there is a valid agreement not to revoke, which agreement is fair and reasonable and adequately supported by consideration, equity will grant a sort of '*quasi*-specific performance' by making the parties who receive the estate constructive trustees for the intended beneficiaries under the revoked mutual will, in accordance with the terms of the con-

tract. (*Wolf* v. *Donahue*, 206 Cal. 213 [273 Pac. 547]; see notes, 13 Cal. Law Review, 179; 28 Harvard Law Review, 237, 241.) This principle is recognized as the general rule in most jurisdictions. It is stated as follows in 69 Corpus Juris, page 1302, section 2725:

" 'The rule is well settled that, on the death of one of the parties to an agreement for mutual wills, leaving a will in accordance with the agreement, the survivor becomes estopped from making any other or different disposition of his property than that contemplated in such agreement, and his obligations under the agreement become absolutely irrevocable, and enforceable against him, at least where he avails himself of provisions of decedent's will in his favor, or accepts any benefits thereunder, even though, it has been held, his will is revoked by operation of law, as by his subsequent marriage; and his heirs, after his death, have no rights better than, or superior to, his own.' " The case came to this court on a second appeal after the trial court had found that the plaintiffs had failed to prove the oral contract on which their claim of a constructive trust was based. This judgment was affirmed (20 Cal. App. (2d) 694 [67 Pac. (2d) 734]), but there has been no departure from the ruling on the first appeal adopting the "*quasi*-specific performance" doctrine.

*Wolf* v. *Donahue*, 206 Cal. 213, 220 [273 Pac. 547], supports the general principle upon which this doctrine is based. It is there said: "The statutes of this state provide that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. (Civ. Code, sec. 1624, subd. 7; Code Civ. Proc., sec. 1973, subd. 7.) It is well settled in this state by numerous decisions that a court of equity will decree specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction. (*Owens* v. *McNally*, 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710]; *Doolittle* v. *McConnell*, 178 Cal. 697 [174 Pac. 305]; *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 Pac. 728]; *McCabe* v. *Healy*, 138 Cal. 81 [70 Pac. 1008]; *Steinberger* v. *Young*, 175 Cal. 81 [165 Pac. 432].)" In *Estate of Rath*, 10 Cal. (2d) 399, 404 [75 Pac. (2d) 509, 115 A. L. R. 836], the husband and wife entered into a written agreement whereby Mrs. Rath agreed to will described property to her husband in the event he survived her and Mr. Rath in turn

agreed that he would make a will devising the same property "or such portion thereof as has not been used or consumed by him during his natural life" to beneficiaries named in the contract. Mrs. Rath died leaving a will in which she devised all property owned by her to her husband in fee simple absolute. In the litigation following the death of the husband the Supreme Court said: "But said estate was subject to the charge of the valid contract, enforceable in equity, that the husband should use and consume the estate only for 'his livelihood and support' and that the unused portion should be devised by him to his wife's nephews. Had he either died intestate or devised the property to other persons, such persons would have held the property as constructive trustees for said nephews, and could have been compelled in an equitable action to turn over the property to the nephews. (*Estate of Rolls*, 193 Cal. 594 [226 Pac. 608]; *McCabe* v. *Healy*, 138 Cal. 81 [70 Pac. 1008]; *Owens* v. *McNally*. 113 Cal. 444 [45 Pac. 710, 33 L. R. A. 369]; 25 Cal. Jur. 152; 26 Cal. Jur. 834.)"

From the foregoing it follows that the written agreement of March 31, 1930, was a valid contract for the disposition of the respective interests of the husband and wife in the property therein described, and that following the death of the wife, the husband having taken possession of all the property therein described, enjoyed all the benefits of the contract, and denied to the estate of the wife any claim or interest in the property adverse to him, he thereupon became estopped from making any other or different disposition of the property from that contemplated by the agreement. It follows as well that he could not avoid this estoppel either by a subsequent marriage or a will disregarding the terms of his contract since there was no rescission or cancellation of the contract during the life of the former wife. When, therefore, the appellant entered into possession of the property as executrix of his estate, she took no interest greater than that of the decedent. Under the rule of the cases cited she then became a trustee for the benefit of the respondents. It would serve no purpose, therefore, to ascertain what estate was created in Andrew and Else or either of them or to determine what estate if any was created in the respondents by the terms of the agreement. The single issue as discussed in the cases cited is that since Andrew and Else executed a writ-

ten contract which the law authorized them to make wherein they mutually agreed to provide for their four children and that, since this contract had been made for the benefit of these children, they have the right to demand its enforcement, and this right cannot be denied solely because of the death of the parties against whom specific performance might be satisfied. , All the equities support the judgment of the trial court upon this issue. There is no equity in the claim of the appellant. She entered into a contract with Andrew following the death of Else which was designed to aid Andrew in a repudiation of the contract with his former wife and this was done on her part with full knowledge of the former contract and of the rights of the respondents to the property in litigation. About a year later she and Andrew married, having been advised by counsel that such marriage would abrogate the contract and revoke the will which Andrew had made subject to its terms. Upon the issue of title and right of possession the equities are all with the respondents as found by the trial court.

Appellant argues that the respondents should be foreclosed from asserting any interest in the property because of the judgment of June 17, 1931, quieting Andrew's title as against Karsten as executor of the estate of Else. The record discloses nothing but a finding that such a judgment was entered on default, and a copy of such judgment. We have none of the pleadings, none of the evidence, and nothing showing what issues were tendered. In support of the decree which is the subject of this appeal we must indulge in all assumptions which would tend to sustain it. It is a fair assumption from the conclusions reached by the trial court that the former judgment was based upon the same recognition of the respective rights of the parties as is emphasized here. If on the former trial the separation contract was put in issue it is fair to assume that the court there determined that the estate of Else had no legal or equitable interest in the property, but that the title vested in Andrew as the sole survivor under that agreement. On the other hand, if the separation contract was not put in issue on the former trial, we cannot perceive how the judgment is any adjudication of respondents' interest in the property. By the terms of the contract the title rested in Andrew alone following the death of Else. It was by his will only that legal title would be transmitted to

the respondents under the terms of the contract. Else therein undertook to waive all claim and interest in the event that she should predecease Andrew. If these were the issues determined on the former trial they are in full accord with the views herein expressed. If none of the issues raised here was raised in the former trial it must be apparent that that judgment could stand without a determination of these issues— as a holding that, as between Andrew and the estate of Else, there was no controversy over title, since all the property involved was acquired before 1923 and was property of the community. In either event the record here does not disclose a former adjudication of the issues now involved which was adverse to the position asserted by respondents.

██ It is also argued that Else repudiated the separation contract by leaving a will inconsistent with it. This will was executed on February 13, 1930; the separation contract was executed on March 31, 1930. Repudiation is a question of fact and intent. The record discloses nothing more than that the will was executed on the date named and was "left" at the time of her death. We may not assume that the failure to revoke or destroy the will was a repudiation of the contract. It is more in accord with the record to assume that neither party executed a new will because they believed that the contract settled all their rights to the property, and that the survivor of either would in due course execute a will leaving the property to their children in accordance with the terms of the contract.

██ Appellant finally argues that the respondents have sought the wrong remedy, that if they are entitled to any relief at all their remedy is exclusively one for damages for the breach, or to impress a trust upon the property after it has been distributed to her in the probate court. The respondents prayed for a declaration of trust and for an order requiring appellant to convey to them. We have heretofore said that such proceedings are for a "*quasi*-specific performance" of the contract. A party is not always left to the doubtful remedy of an action at law for damages when specific performance can be enforced. In a case of this kind specific performance is effected by a declaration of trust and an order to convey. Such relief here would have been proper under the pleadings and findings. The estate is small and the litigation has been running for nearly ten years. It would serve no purpose to

either party to continue it further when the only result would be a change in the "paper" title—a title in respondents resting upon a written conveyance executed under a court order after an adjudication of the trust, or a title in them resting upon the final judgment herein determining that their title is free from all adverse claims. No other arguments advanced on the main appeal require consideration.

On the second appeal both appellants and respondent devote a large part of their argument to a discussion of the application of the doctrine of *res adjudicata* (sic) to the portion of the judgment appealed from. The doctrine of *res judicala* is based upon public policy; it rests upon the ground that matters distinctly put in issue and determined by a court of competent jurisdiction as to parties and subject matter shall not be retried between the same parties in any subsequent suit in any court. (30 Am. Jur., p. 910 et seq.) Prerequisites to the application of the doctrine are: identity of the subject matter with that put in issue in the former adjudication, identity of the parties, or their privies, and jurisdiction of the former tribunal to determine the issue litigated. (*Idem.*)

On this appeal we may concern ourselves solely with the latter element. The order designating a homestead to Martha Sonnicksen was made under the provisions of section 661 of the Probate Code, which declares that the probate court, upon the petition of the surviving spouse, or minor children, "must select . . . a homestead for the use of the surviving spouse and the minor children" out of the property of the decedent. In making the order the probate court acts under the limited jurisdiction conferred by the Probate Code and is without power or jurisdiction to try or determine any adverse claim of title to the property of the decedent. To the contrary, one of the purposes of the code section is to make provision for the maintenance of the surviving spouse and minor children during the pendency of any such litigation involving adverse claims to decedent's estate.

The rule of decision in this state is in full harmony with these provisions of the Probate Code, and we find no departure from the statement of the rule in 11A Cal. Jur., page 649, reading: "It is the duty of the court to set apart the homestead, and the performance of that duty does not change the property itself, nor affect the true title to it. The proceedings operate only upon whatever right the deceased had at

the time of his death. In exercising its jurisdiction over the property and in making the order, the court deals with the property only as an asset of the estate. Being inventoried and appraised as such, it is subject to the jurisdiction of the court in the administration, but neither the inventory nor the withdrawal of a portion of it as a homestead affects or adjudicates the question of title as between parties claiming title thereto. Any question as to the validity of title must be tried and determined in another forum, in some appropriate action brought for the purpose. In view of the foregoing, it is clear that if one's opposition to granting the order is overruled by the probate court that does not preclude him from establishing his title in an action brought for that purpose.''

The first case found in support of the text is *Rich* v. *Tubbs,* 41 Cal. 34. An unbroken line of authorities down to *Estate of Niccolls,* 164 Cal. 368, 373 [129 Pac. 278], is in full harmony with the rule. In the latter case the court, referring to the jurisdiction of the probate court upon a petition to set aside a homestead, adopted the following language from *Estate of Burton,* 64 Cal. 428 [1 Pac. 702]: ''It determines, merely, that the parcel named is selected from the estate of the deceased (whatever his interest therein may have been) and who are the persons entitled to the benefit of the homestead selection. . . . Title to real estate cannot be tried in such proceeding.''

From the foregoing it follows that the order in probate setting aside a homestead to the widow is not an adjudication of the title to the property, and that the appearance of one of the heirs in opposition to the widow's petition does not foreclose him now, because the probate court was without jurisdiction in that proceeding to determine the issue of title.

On defendant's appeal the judgment is affirmed, on plaintiffs' appeal the portion of the judgment appealed from is reversed with directions to modify the judgment in accordance with the views herein expressed. The plaintiffs will have their costs on both appeals.

Sturtevant, J., and Spence, J., concurred.