595 P.2d 177

**In re the MARRIAGE OF James Edward FURIMSKY, Appellant,**

**and**

**Virginia Ann Furimsky, Appellee.**

**No. 1 CA–CIV 3530.**

Court of Appeals of Arizona, Division 1, Department C.

April 4, 1978.

Rehearing Denied May 9, 1978.

Review Granted June 8, 1978.

Skousen, McLaws & Skousen, P. C., by Richard E. Skousen, Mesa, for appellant.

Larry J. Richmond, P. C., by William M. Lawson, Jr., Phoenix, for appellee.

## OPINION

SCHROEDER, Judge.

This appeal concerns the distribution of military retirement pay upon dissolution of a marriage. It requires us to consider the applicability of the "quasi-community property" provision of A.R.S. § 25–318 to pension credits earned in other jurisdictions prior to the date the provision became effective in 1973.[1]

The parties were married in 1957 while the appellant-husband was stationed with the Air Force in New Mexico. Appellant remained with the Air Force throughout the duration of the marriage, and the coupled lived in many jurisdictions where he was stationed. These included Wisconsin, Illinois, Germany and Korea.

---

1. A.R.S. § 25–318, with emphasis on the pertinent provision, provided as follows:

   "In a proceeding for dissolution of the marriage, or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which previously lacked personal jurisdiction over the absent spouse or previously lacked jurisdiction to dispose of the property, the court shall assign each spouse's sole and separate property to him. It shall also divide the community, joint tenancy, and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct. *For purposes of this section only, property acquired by either spouse outside the state shall be deemed to be community property if said property would have been community property if acquired in this state.* Nothing in this section shall prevent the court from considering excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common." (Emphasis added).

   Amendments effective in 1977 did not materially change the statute in effect at the time of this proceeding before the trial court.

In January, 1973, the parties moved to Arizona and the marriage was dissolved in this State in March, 1974. The dissolution decree was silent as to appellant's retirement pay. In November, 1974, appellant retired from the Air Force and began receiving retirement pay which had been earned throughout the previous 20 years.

The present proceedings were subsequently instituted by the appellee-wife with the filing of a petition for modification of the dissolution decree to award her a share of the retirement pay as community property. The trial court treated 3/20 of the pension, representing the credits earned by the husband during the three years before the marriage and the short period after the dissolution, as his separate property. It treated 17/20 of the pay, representing the credits earned during the 17 years of the marriage, as community property. This resulted in an award to the wife of one-half of 17/20 of the pay, or approximately 43 percent. The result reached by the trial court is fully consistent with the pertinent portion of A.R.S. § 25–318 which provides that "property acquired by either spouse outside the state shall be deemed to be community property if said property would have been community property if acquired in this state." See also, Everson v. Everson, 24 Ariz.App. 239, 244, 537 P.2d 624, 629 (1975), holding that pension plans are a form of compensation and that the portion of the plan earned during coverture is property of the community.

Before the trial court and in the initial briefs filed in this Court, appellant advanced two principal arguments in opposition to the trial court's decision. The first argument was that the wife could claim no interest in the pension because appellant, at the time of the dissolution, had not yet retired and had not yet acquired a vested right in the retirement pay. This issue has subsequently been answered by decisions of our Supreme Court holding that the portion of retirement pay attributable to efforts during the marriage should be deemed community property even though the pension had not yet vested. Van Loan v. Van Loan, 116 Ariz. 272, 569 P.2d 214 (1977); Neal v. Neal, 116 Ariz. 590, 570 P.2d 758 (1977).

Appellant's second argument was that, because at the time most of the credits were earned, the parties were domiciled in non-community property jurisdictions, the trial court erred in treating the credits earned during the marriage as community property and that the court should have awarded the bulk of the pension to the appellant as his separate property. Neither the Supreme Court's decision in Van Loan or Neal discussed any issue with respect to where the pension credits were earned. However, this Court in Woodward v. Woodward, 117 Ariz. 148, 571 P.2d 294 (1977), raised a question in that connection. The Court in Woodward pointed out that A.R.S. § 25–318 changed the usual conflict of law rule which would have applied the law of the jurisdiction of the domicile of the parties at the time of the acquisition of the property, and not Arizona law, to characterize it as separate or community. The Court's opinion went on to state that the trial court in that case should decide whether the statute was to have "retroactive application" to property acquired prior to its effective date, August 8, 1973. That issue must be decided in this appeal.

Because the decisions in Van Loan, Neal, and Woodward, were all filed after the briefs were initially filed in this case, we ask the parties to submit supplemental briefs taking them into account.

Appellant's principal contention in his supplemental brief is that the legislature did not intend the relevant provision of A.R.S. § 25–318 to apply retroactively to property acquired before its effective date. Consideration of this question requires some understanding of the legal developments prior to the enactment of the statute, and since our provision is similar to California's, Cal. [Civil] Code § 4803 (West), formerly § 140.5, the California experience in this area is instructive.

In 1961 California enacted a comprehensive quasi-community property statute designed to change traditional principles of distribution of property originally acquired

in other states. California, prior to the adoption and judicial approval of that statute, followed the principle, similar to Arizona's traditional rule, that the property interests of a husband and wife in personal property were governed by the laws of the domicile of acquisition. *E. g., Schecter v. Superior Court,* 49 Cal.2d 3, 314 P.2d 10 (1957). In a divorce, this principle was applied to characterize the property as either separate or community. Thus, property acquired, for example, in the name of the husband in a common law jurisdiction, was characterized as his separate property even though it represented the earning efforts of both spouses. Upon divorce of the parties in California after establishing a California domicile, the California courts would then, however, apply California law to distribute that property. *E. g., Latterner v. Latterner,* 121 Cal.App. 298, 8 P.2d 870 (1932). Property characterized as separate would be awarded to the acquiring spouse because under California law, like Arizona's, separate property is not divisible upon divorce. *E. g., Machado v. Machado,* 58 Cal.2d 501, 25 Cal.Rptr. 87, 375 P.2d 55 (1962).

A typical, harsh example of the application of these principles can be described as follows. The husband and wife have both worked on the farm in a common law jurisdiction owned in the husband's name. The farm is then sold, the parties move to California, and are divorced. The wife is awarded no portion of the proceeds of the sale because it is characterized as the husband's separate property. This result would follow even though had the property been acquired in California it would have been community property and even though under the law of the jurisdiction in which the property was acquired, the wife or non-acquiring spouse might well have been awarded a share of the proceeds upon a divorce under the laws of that state. The anomalies of this system have been described as follows:

"California courts classify the marital property according to the laws of the domicile of acquisition, but then apply California law governing that class of property. This failure to consider that

property acquired by persons in a common law state, whether before or after marriage, has different marital property characteristics than any property acquired by a husband or wife while domiciled in California results in the courts applying neither the law of the common law state of acquisition nor the law of California. The nonacquiring spouse is thus denied the protection of both marital property systems." Comment, *Marital Property and the Conflict of Laws: The Constitutionality of the "Quasi-Community Property" Legislation,* 54 Cal.L.Rev. 252, 254–55 (1966) (footnotes omitted).

A cure to the resulting inequities was sought by the California legislature through enactment of statutes requiring the community property law of California to be applied both to characterize property as separate or community and to govern its distribution. Two such legislative attempts, in 1917 and 1923, were nullified by the California courts. *Estate of Thornton,* 1 Cal.2d 1; 33 P.2d 1 (1934); *Estate of Drishaus,* 199 Cal. 369, 249 P. 515 (1926). In both cases, the underlying rationale of the majority was drawn from an earlier case, *Spreckels v. Spreckels,* 116 Cal. 339, 48 P. 228 (1897), which was said to stand for the principle that, as a matter of constitutional law, retroactive application of legislation affecting a spouse's interests in community property would constitute an invalid impairment of a vested right. *See generally,* Note, *Retroactive Application of California's Community Property Statutes,* 18 Stan.L.Rev. 514, 515 (1966). The constitutional underpinning of these decisions came under constant attack by scholars. *E. g.,* Armstrong, *"Prospective" Application of Changes in Community Property Control—Rule of Property or Constitutional Necessity?,* 33 Cal.L.Rev. 476 (1945); Schreter, *"Quasi-Community Property" in the Conflict of Laws,* 50 Cal.L.Rev. 206 (1962). This criticism was shared by Justice Traynor in *Boyd v. Oser,* 23 Cal.2d 613, 145 P.2d 312 (1944) (concurring opinion):

"The decisions that existing statutes changing the rights of husbands and

wives in community property can have no retroactive application have become a rule of property in this state and should not now be overruled. It is my opinion, however, that the constitutional theory on which they are based is unsound. . . That theory has not become a rule of property and should not invalidate future legislation in this field intended by the Legislature to operate retroactively." 145 P.2d at 318 (citations omitted).

Moreover, the entire theory of vested rights as determining choice of laws principles have been substantially repudiated in recent years. *See generally,* Restatement (Second) of Conflict of Laws § 6 (1971); Cavers, *A Critique of the Choice-of-Law Problem,* 47 Harv.L.Rev. 173 (1933); Currie, *On the Displacement of the Law of the Forum,* 58 Colum.L.Rev. 964 (1958); Currie, *Notes on Methods and Objectives in the Conflict of Laws,* 1959 Duke L.J. 171.

The third legislative effort, in 1961, was, however, approved by the California Supreme Court in a decision which upheld the statute's applicability to all property, regardless of the date of its acquisition, involved in divorces filed after the time of the effective date of the legislation. *Addison v. Addison,* 62 Cal.2d 558, 43 Cal.Rptr. 97, 399 P.2d 897 (1965). The court in *Addison* held that to the extent application of such a law might be said to interfere with "vested rights" the interest of the state in overseeing an orderly and equitable distribution of property upon divorce justified it.

" 'Vested rights, of course, may be impaired "with due process of law" under many circumstances. The state's inherent sovereign power includes the so called "police power" right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. The annals of constitutional law are replete with decisions approving, as constitutionally proper, the impairing of, and even the complete confiscation of, property rights when compelling public interest justified it.

\* \* \* \* \* \*

The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment.' " 43 Cal.Rptr. at 102, 399 P.2d at 902, *citing,* Armstrong, *"Prospective" Application of Changes in Community Property Control—Rules of Property or Constitutional Necessity?,* 33 Cal.L.Rev. 476, 495–96 (1945).

The court then weighed the interest of California in determining the rights of the parties in a dissolution of marriage. The court concluded that

"where the innocent party would otherwise be left unprotected the state has a very substantial interest and one sufficient to provide for a fair and equitable distribution of the marital property without running afoul of the due process clause of the Fourteenth Amendment." *Id.* 43 Cal.Rptr. at 103, 399 P.2d at 903.

Subsequent California cases have reaffirmed that view. *In re Marriage of Bouquet,* 16 Cal.3d 583, 128 Cal.Rptr. 427, 546 P.2d 1371 (1976); *In re Marriage of Walton,* 28 Cal.App.3d 108, 104 Cal.Rptr. 472 (1972). The cases have progressively eaten away the vitality of the original *Spreckels* doctrine in California. *See* Reppy, *Retroactivity of the 1975 California Community Property Reforms,* 48 So.Cal.L.Rev. 977, 1083 (1975); Note, *Retroactive Application of California's Community Property Statutes,* 18 Stan.L.Rev. 514, 521 (1966).

Arizona, prior to the 1973 amendments, had a somewhat different experience. In 1969, Division Two of this Court decided *Rau v. Rau,* 6 Ariz.App. 362, 432 P.2d 910 (1967). Its decision adhered to the traditional principle that property should be characterized as community or separate in accordance with the law of the domicile of acquisition. However, it rejected any requirement that the property then be distributed in a divorce in accordance with Arizona law which proscribes division of property characterized as separate. Rather, the

Court in *Rau* held that an Arizona court in a divorce proceeding should sit as a court of the state of acquisition, and divide the property in accordance with that law. Thus, the Court held that the property in that case, acquired in Illinois, was separate under Illinois law, but that Illinois would have permitted awarding the non-acquiring spouse, the wife, a share in the property upon divorce. The Court, therefore, granted the wife an interest in the husband's property. The opinion viewed the question as one of choice of law, and refused to hold that the husband had acquired a vested right to the property which precluded its division. In awarding the property according to Illinois Law, the Court also rejected *Latterner v. Latterner*, 121 Cal.App. 298, 8 P.2d 870 (1932), in which the court had applied California law in distributing property acquired elsewhere, finding it unpersuasive in its reasoning.

The principles enunciated in *Rau*, while theoretically consistent, are, nevertheless, fraught with real practical problems. Under *Rau*, the Arizona Court sits as a court of at least 50 jurisdictions, not merely in respect to characterizing rights to property on acquisition, but in characterizing rights on dissolution of marriage. In a specific case, such as the *Rau* case itself, the problems may be relatively simple because the bulk of the property was acquired in only one state other than Arizona. But with increased population mobility, our courts are frequently faced with cases where property has been acquired in many different jurisdictions. Each has its own system and

means of achieving equitable distribution upon dissolution of marriage assuming that all property is divided in accordance with that system. However, when property has been acquired in many domiciliary jurisdictions, literal application of *Rau* results in a patchwork distribution of property which brings about an overall equitable distribution only by coincidence. Some of the problems associated with this approach are pointed out in W. Reppy & W. De Funiak, *Community Property in the United States*, at 489 (1975).[2]

In 1973, Arizona substantially revised its divorce status. The amendments included the provision with which we are concerned in A.R.S. § 25–318. That provision substitutes, for traditional choice of law rules, the principle that all property acquired in other states should be treated upon dissolution as if the property had been acquired in Arizona. The amendment thus permits application of one law, Arizona's, to achieve an equitable distribution of property when the marriage is dissolved. The provision was added after the California Supreme Court's decision in *Addison*, and after *Rau v. Rau*. As described by one commentator its adoption is in effect an abandonment of *Rau* in favor of quasi-community property. *Id.* at 469.

We turn now to the specific question posed by appellant's supplemental brief, and that is whether in enacting the quasi-community property provision of A.R.S. § 25–318 the legislature intended that it apply to property acquired before its effective date.

2. The burdens on the court and parties through application of the *Rau* principles are vividly illustrated by this case. Neither party has attempted to determine how the pension would be treated under the law of each jurisdiction in which the parties actually resided. The appellant, recognizing the difficulty of applying the laws of many different jurisdictions to divide one military pension, has asserted that the law of Pennsylvania should apply to all of the pension credits. Appellant originally enlisted in the Air Force in 1954 in Pennsylvania, and Pennsylvania remained his "home of record" throughout his military service. He, therefore, argues that since for military purposes Pennsylvania remained his domicile, its laws should govern the distribution of property under tradi-

tional principles. We reject this argument for the reason that under traditional principles in Arizona, the law to be applied is the law of the "marital domicile" at the time of acquisition. *Jizmejian v. Jizmejian*, 16 Ariz.App. 270, 492 P.2d 1208 (1972); *Rau v. Rau*, 6 Ariz.App. 362, 432 P.2d 910 (1967). The parties in this case were not married in Pennsylvania, and the record does not indicate that they ever lived in Pennsylvania. Pennsylvania, therefore, has no interest whatsoever in the distribution of the property of this marriage, and under the conflict of law principles, its law should have no applicability whatsoever. *See generally*, Schreter, *"Quasi-Community Property" in the Conflict of Laws*, 50 Cal.L.Rev. 206 (1962).

■ Civil statutes are not automatically invalid if given retroactive application. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692 (1960). Arizona law does, however, carry over by express statute the common law presumption against retroactivity.[3] Our courts have from an early date, particularly in the context of dissolution of marriage provisions, considered the question of retroactivity to be principally one of legislative intent. *E. g., Schuster v. Schuster*, 42 Ariz. 190, 23 P.2d 559 (1933); *Fox v. Superior Court*, 21 Ariz.App. 284, 518 P.2d 1001 (1974). In *Schuster*, the Court stated that when language used in a statute is plain and demonstrates that it is to be applied to periods prior to its effective date, then the statute should be so applied. The legislature, stressed the Court, need not use the expression "this statute shall be retroactive" or any similar language in expressing its legislative purpose. The Court went on to hold that the language of the statute before it was sufficient to indicate legislative intent because it was phrased in the past tense.

The same type of language is used here. At the time the statute became effective, the only property to which it could apply was property acquired in the past by the parties in other jurisdictions. The statute expressly applies to property "acquired" in other jurisdictions.[4]

■ Moreover, it is highly improbable that the legislature intended the awkward results which would ensue if the statute applied only to property acquired after its effective date. Under such an application, two different kinds of property would be created: that acquired prior to August 8, 1973, and that acquired after. If that were the case, our courts would continue to cope with the problems of the prior law in every dissolution involving parties who lived outside of this state prior to 1973, and it would take a generation or more to achieve the consistent and unified application of law envisioned by the statute. Thus, hypothetically, if a couple moved to Arizona in 1977 from a common law jurisdiction, and applied for dissolution in this State today, the court would have to apply the law of the former domicile to all property acquired prior to 1973, but Arizona law to property acquired in that same State thereafter. We perceive little social utility in such an application. For all of the above reasons, we hold that the legislature in enacting the pertinent sentence of A.R.S. § 25–318 intended that it apply to all property acquired in other jurisdictions regardless of the date of acquisition.

Appellant's supplemental brief and memoranda to this Court argue only the issue of legislative intent, and do not urge any constitutional infirmity in the statute or rest upon any theory of interference with vested rights. We are aware that Division Two of this Court has recently issued a decision holding that this statute is not to be given retroactive effect. *Czarnecki v. Czarnecki*, 2 CA–CIV 2499 (Ct.App., filed Jan. 24, 1978).[5] It does not appear that the ques-

---

3. A.R.S. § 1–244 provides:
   "No statute is retroactive unless expressly declared therein."

4. California's statute specifically states that it is to apply to all property "heretofore or hereafter acquired," but we do not believe that the absence of that language in the Arizona statute indicates an intent to make our statute apply prospectively only. The language was added to the California statute in response to an early California court decision, *Estate of Frees*, 187 Cal. 150, 201 P. 112 (1921), which had misinterpreted that legislature's intent. In *Estate of Drishaus*, 199 Cal. 369, 249 P. 515 (1926), the court treated this language as demonstrating a legislative intention to make the statute retroactive.

5. The opinion states in pertinent part:
   "Appellant contends that in any event A.R.S. § 25–318, Added Laws 1973, Ch. 139, § 2 authorizes the trial court to treat all of the retirement benefits which accrued during the marriage as community property even though some of the benefits are attributable to employment in a non-community state.
   . . .
   In *Oppenheimer v. Oppenheimer*, 22 Ariz. App. 238, 526 P.2d 762 (1974) we held that the statute cannot be given retroactive effect when the result would be to destroy vested rights. In *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977) the court held that an unvested right to a pension is a contractual right. We believe that appellee's pension

tions of choice of law were comprehensively presented to the Court in that case, for the opinion relies solely on *Oppenheimer v. Oppenheimer*, 22 Ariz.App. 238, 526 P.2d 762 (1974). That decision, however, involved a different portion of A.R.S. § 25–318 which deals with division of joint tenancy property acquired in Arizona and has nothing whatsoever to do with property acquired in other jurisdictions.

What is more, the language used by the Court in *Czarnecki* would appear to view acquisition of property in another jurisdiction as giving rise to irrevocably fixed rights from the moment of acquisition. It would thus appear to bar application of the quasi-community property concept to any property acquired prior to the filing for dissolution, not merely property acquired prior to the statute's effective date.

On the basis of the authorities discussed above, we decline to follow this view. To the extent that application of Arizona law to property acquired in another jurisdiction may be said to result in an interference with the rights or expectations of the parties, we agree with the principles enunciated by the modern California decisions. Such action is fully justified and reasonable in connection with proceedings under our dissolution law and involving parties who have become residents of this State.

The judgment is affirmed.

DONOFRIO, P. J., and OGG, J., concur.

---

rights prior to moving to Arizona are of such a nature as to proscribe retroactive application of the statute." 2 CA–CIV 2499, slip op. at 3–4.

Prior to *Czarnecki*, Division Two had indicated a similar conclusion. *Burton v. Burton*, 23 Ariz.App. 159, 162 note 1, 531 P.2d 204, 207 note 1 (1975).