442 So.2d 1330 (1983)
Betty Jane GILBERT, Plaintiff-Appellee,
v.
Prentice D. GILBERT, Defendant-Appellant.
No. 83-378.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
Writ Denied February 27, 1984.
*1331 Kramer & Hammill, Harry A. Hammill, Alexandria, for defendant-appellant.
Lauve & Hill, Blaise L. Hill, Alexandria, for plaintiff-appellee.
Prentice Gilbert, in pro. per.
Before GUIDRY, FORET and KNOLL, JJ.
FORET, Judge.
Plaintiff, Betty Jane Gilbert, filed this suit against defendant, Prentice D. Gilbert, her former husband, to obtain a partition of defendant's Federal Civil Service disability retirement pension. At issue on appeal is:
(1) whether Mr. Gilbert's benefits are classified as retirement or disability;
(2) whether the law of Georgia or Louisiana is to apply, or whether both are superseded by Federal Law; and
(3) how the case is to be resolved under the applicable law.

FACTS
Betty Jane Gilbert and Prentice D. Gilbert were married in South Carolina on October 8, 1960. They established their matrimonial domicile in Georgia. On November 7, 1966, Prentice D. Gilbert began working with the Federal Civil Service at Warner Robbins Air Force Base. He remained so employed until April 2, 1975, when he was forced to retire because of a serious physical disability.
In June of 1975, the couple moved to Louisiana, where they established a new matrimonial domicile in Rapides Parish. Subsequently, they began experiencing marital difficulties, and as a result, Prentice D. Gilbert filed suit on October 13, 1977, seeking a legal separation. A judgment of separation was rendered in May of 1978.
Prior to the legal separation, the couple divided certain movable and immovable property by an informal written agreement dated September 16, 1977. Left unsettled was Mr. Gilbert's Federal Civil Service Disability Retirement Pension. Subsequently, Betty Jane Gilbert filed suit seeking a partition of this retirement pension. Mr. Gilbert answered, claiming that the benefits were his separate property.
The trial court, after applying Georgia law, ruled in favor of Mrs. Gilbert, awarding her one-half of all benefits which had been paid to her former husband as well as all benefits which were to be paid in the future. Mr. Gilbert appeals, alleging two assignments of error:
(1) The trial court erred in characterizing disability retirement benefits under 5 U.S.C.A., § 8337 as retirement benefits, and therefore, community assets.
(2) The trial court erred in not classifying the disability benefits paid to Mr. Gilbert as damages due to personal *1332 injury sustained during the existence of the community under LSA-C.C. Art. 2344 and therefore separate property subject only to a claim by the community as a result of the injury or for the loss of community earnings.

CLASSIFICATION OF BENEFITS
The monthly benefits that Mr. Gilbert receives arise pursuant to 5 U.S.C.A., § 8337 and are considered payments for "disability retirement". This section is found under Chapter 83, which is entitled "Retirement". It is also found under sub-chapter III entitled "Civil Service Retirement". It is the preceding chapter in 5 U.S.C.A. that deals with compensation for work injuries, the federal counterpart of our state worker's compensation statute. U.S.C.A. § 8101, et seq. Thus, from where the applicable section is found in the statute, we can see that the "disability retirement" benefits that Mr. Gilbert receives are more in the nature of a retirement scheme than compensation for disability. We therefore believe that the lower court correctly classified the benefits under the scheme and intent of the United States Code provisions, and find no merit to Mr. Gilbert's argument that the benefits should be classified as damages due to personal injury.

CONFLICTS OF LAWS
Continuing our analysis of 5 U.S. C.A., under Sub-Chapter III thereof, § 8345(j)(1) provides:
"(j)(1) Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this paragraph to a person bars recovery by any other person."
Accordingly, the United States is required to recognize certain property divisions made by a state court which concern civil service retirement benefits. McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, at 2740, 69 L.Ed.2d 589 (1981). Because the federal statute provides that payment of these benefits may be subject to state court decrees, we must now decide whether Louisiana or Georgia law is to apply in this case.
Mr. Gilbert argues that the benefits are to be governed by Louisiana law and are to be classified as damages due to personal injuries and therefore his separate property under LSA-C.C. Article 2344[1]. *1333 We disagree. Since the couple's matrimonial domicile was in Georgia during the entire period of Mr. Gilbert's employment with the Civil Service, Georgia law is applicable. LSA-C.C. Art. 10; LSA-C.C. Art. 2334, and Comment B[2]; Succession of Dunham, 408 So.2d 888 (La.1981).

APPLICATION OF GEORGIA LAW
Although Louisiana law clearly states that Georgia law is to apply in this case, the question becomes how much Georgia law to apply. Georgia is a separate (non-community) property state. Georgia Constitution, Art. 1, § 1, Para. XXVII. To offset the inequities which often result in a separate property regime, the Georgia Supreme Court has adopted the theory of "equitable distribution" in distributing a couple's assets after the dissolution of their marriage. In essence, the doctrine allows a court to award property to one spouse even when held in the name of the other. Stokes v. Stokes, 246 Ga. 765, 273 S.E.2d 169 (1980).
The doctrine of equitable distribution is limited because it can alter property rights only in the divorce contest. Segars v. Brooks, 248 Ga. 427, 428, 284 S.E.2d 13 (1981). It does not create substantive property rights during the existence of the marriage. The property remains separate as to each spouse, but is equitably distributed upon divorce to prevent any inequities caused by the lack of a community property regime.
The separation and divorce proceedings were conducted in Louisiana, and normally Louisiana matrimonial regime laws would apply. LSA-C.C. Art. 2334. However, if we were to apply Georgia property law, which is a separate property regime, and Louisiana matrimonial regime law, which has no equitable distribution doctrine, Mr. Gilbert would be considered the separate owner of the benefits[3]. LSA-C.C. Art. 2341. This would have the inequitable result of giving him the right to the entire benefits in Louisiana, a right which would not have been available to him in Georgia, the location of the matrimonial domicile at the time of his employment with the Civil Service and thus, the time of the vesting of rights in the benefits. Because the Supreme Court of Georgia created the equitable distribution doctrine to offset the inequities which often arise in a separate *1334 property regime, and considering the way the two doctrines are so intricately tied, we find that we cannot apply Georgia separate property law without also applying Georgia's equitable distribution doctrine. Thus, the trial judge was correct in applying the equitable distribution doctrine.
Several factors are to be considered in determining what constitutes an equitable distribution. They include:
(1) The duration of the marriage, and any prior marriage of either party;
(2) The age, health, occupation, vocational skills and employability of each party;
(3) The contribution or service of each spouse to the family unit;
(4) The amount and sources of income, estate, debts, liabilities, and needs of each of the parties, as well as debts against property;
(5) Whether the appointment is in lieu of or in addition to permanent alimony; and
(6) The opportunity of each for future acquisition of assets and income by employment or otherwise.
Stokes v. Stokes, supra, concurrence by Justice Hill.
The record shows that the couple had been married for over fifteen years before their break-up. During that marriage, Mrs. Gilbert raised the two children born of the marriage and ran the household while Mr. Gilbert was at work. When Mr. Gilbert returned to school to obtain an accounting degree, Mrs. Gilbert took an outside job to support the family.
Mrs. Gilbert's suit was brought without an accompanying claim for alimony. Her lack of job training and high school education severely limit her opportunities to obtain much in the way of future assets and income. Finally, Mrs. Gilbert is suffering from arthritis and heart problems and is not in the best of health[4]. Considering all these factors, we do not feel that the trial judge erred in his determination that Mrs. Gilbert was entitled to one-half of all past and future retirement benefits. We affirm.

DECREE
For the reasons set forth above, we affirm the ruling of the trial court. All costs are to be assessed against defendant-appellant, Prentice D. Gilbert.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
The instant case presents an important conflict of laws issue which demonstrates the need for a flexible approach to choice of law questions when mechanical application of conflicts rules would achieve a result which serves the interests of none of the states involved.
In Succession of Dunham, 408 So.2d 888 (La.1981), the Supreme Court stated the well settled rule that the classification of property in terms of whether it is community or separate is governed by the domicile of the acquiring spouse at the time of acquisition. Mr. Gilbert was a Georgia domiciliary during his entire tenure with the federal civil service. Thus it is clear that Georgia law governs the classification of his retirement benefits. Since Georgia is a separate property state, such benefits are clearly the separate property of Mr. Gilbert.
The difficulty arises in determining which law governs the distribution of Mr. Gilbert's separate property upon dissolution of the marriage. It is clear that when a marriage is dissolved by the death of a spouse, the decedent's property is distributed according to the law of the state of his domicile at the time of death. Restatement (Second) Conflict of Laws § 260 (1971). While not as clearly established, this rule appears to be the same in the context of dissolution of the marriage by divorce, i.e., *1335 the distribution of the marital property is governed by the law of the state in which the spouses are domiciled. 27B C.J.S. Divorce § 292(1); Latterner v. Latterner, 8 P.2d 870, 121 Cal.App. 298. This rule would call for the application of Louisiana law in the distribution of Mr. Gilbert's retirement benefits.
The application of Georgia law in classifying the retirement benefits as Mr. Gilbert's separate property, and the application of Louisiana law in distributing such property would result in a total denial of benefits to Mrs. Gilbert. Such a result is unconscionable and inequitable.
This result would be reached despite the fact that, had the Gilberts resided in either Georgia or Louisiana throughout the marriage, Mrs. Gilbert would be entitled to a share of the benefits in question. Had the parties involved continued to live in Georgia through the divorce, the court would have applied Georgia law both in classifying and distributing the property. The property, of course, would be classified as separate. However, according to the doctrine of equitable distribution applied by the Georgia courts, Mrs. Gilbert would be entitled to a portion of Mr. Gilbert's retirement benefits. Had the Gilberts resided in Louisiana throughout their marriage, the retirement benefits accumulated by Mr. Gilbert during his tenure with the civil service would be classified and distributed according to Louisiana law. Thus, the benefits would be classified as community property.[1] Upon divorce, Mrs. Gilbert would have a claim, as owner, to one-half of the benefits in question.
The inequities which result when married persons move from a separate property state to a community property state have long been recognized. See Leflar, American Conflicts Law (1977) § 234 at p. 475; Weintraub, Commentary on the Conflict of Laws (1980) § 8.14 at p. 431; Comment, 35 LaLR at p. 127. To apply Louisiana law to the distribution of Mr. Gilbert's separate estate, thereby depriving Mrs. Gilbert of any share of the retirement benefits, would be to frustrate the policy, shared by Louisiana and Georgia, of providing for an equitable division of property upon divorce.
The decision we reach in the instant case serves the interests of both states. It is based on the recognition that "separate property" in Georgia has a different meaning than that which we attach to the same term in Louisiana. A very important incident to the Georgia concept of separate property is the spouse's right (albeit inchoate) to claim a portion of such separate property upon divorce. Mrs. Gilbert's right in the separate property of her husband should not be forfeited simply by virtue of their having moved to a community property state. See Hughes v. Hughes, 573 P.2d 1194, 91 N.M. 339 (1978); Rau v. Rau, 432 P.2d 910, 6 Ariz.App. 362 (1967). The classification of Mr. Gilbert's retirement benefits as separate according to Georgia law must carry with it the right of Mrs. Gilbert to an equitable distribution of the property upon divorce.
For these reasons I respectfully concur.
NOTES
[1] "Art. 2344. Offenses and quasi-offenses; damages as community or separate property

Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.
Acts 1979, No. 709, § 1, eff. Jan. 1, 1980.
Comments
(a) The notion of personal injury includes injuries to the personality of a spouse and workman's compensation benefits.
(b) Under this provision, the classification of damages as separate or community property no longer depends on the sex of a spouse. An award of damages may be partly community and partly separate property of the injured spouse. Apportionment of the award between the community and the separate property of the injured spouse is required when the community terminates otherwise than by the death of the injured spouse. The noninjured spouse does not, ordinarily, have an interest in the portion of the award designed to compensate the injured spouse for loss of earnings that would have accrued after the termination of the community property regime. This segment of the award, which would fall into the community during the existence of a community property regime, upon termination of the regime is classified as the separate property of the injured spouse. When the regime terminates by the death of the injured spouse, the portion of the award designed to compensate the injured spouse for loss of earnings continues to be classified as community property in the interest of the surviving spouse."
[2] The right involved is an incorporeal movable. Art. 10, paragraph 4 provides:

"Immovables situated in this state, with their accessories, acquired by a married person, are subject to the legal regime of acquets and gains regardless of his domicile. Movables, wherever situated, are subject to the law of the domicile of the acquiring spouse." LSA-C.C. Article 2334 provides:
"Art. 2334. Persons; scope of application of the legal regime
The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage.
Acts 1979, No. 709, § 1, eff. Jan. 1, 1980.
Comments
(a) Spouses may exclude the legal regime under Article 2329, supra.
(b) Under this provision, spouses not domiciled in Louisiana at the time of their marriage become subject to the provisions of this Title from the moment they become Louisiana domiciliaries. However, they may enter into a matrimonial agreement within one year without court approval. See Art. 2329, supra." (Emphasis ours.)
[3] "Art. 2341. Separate property. The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; and damages or other indemnity awarded to a spouse in connection with the management of his separate property. (Acts 1979, No. 709, § 1.)" (Emphasis ours.)
[4] Much of Mrs. Gilbert's testimony as to her present status was found to be irrelevant and was not admitted by the trial judge. It is before this Court through a proffer of proof. Since Georgia law considers the present status of the parties in determining what constitutes an equitable distribution, we find the evidence relevant and therefore admissible.
[1] Having been earned during the marriage, the retirement benefits fall into the community of acquets and gains. The federal law creating the benefits does not prohibit their division; on the contrary, it expressly makes them subject to property settlements incident to divorce actions. 5 U.S.C.A. § 8345(j)(1).