803 So.2d 1074 (2001)
In the Matter of The SUCCESSION OF John Wilson HUBBARD.
No. 2000 CA 2412.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
*1075 Randall A. Shipp, Baton Rouge, LA, for appellant, Ruth B. Hubbard.
Timothy W. Burgmeier, Baton Rouge, LA, for appellees, Diane Lynne Hubbard Patterson and Linda Gayle Hubbard Rothstein.
BEFORE: FOIL, PETTIGREW, and KLINE[1], JJ.
KLINE, Judge.
This is an appeal by a surviving spouse from a judgment applying Florida law to award full ownership of shares of stock in decedent's name to the heirs of the deceased. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
John Wilson Hubbard and Ruth Vanhook Hubbard were married in Oklahoma on February 15, 1964. Mr. Hubbard went to work for Jacobs Engineering Company ("Jacobs") in 1971. The Hubbards moved to Florida and while employed by Jacobs, Mr. Hubbard enrolled in a "Thrift Savings Retirement Plan," which provided for the deduction of funds from his paychecks for investment in specified funds, including Jacobs stock. In conjunction with this retirement plan, Mr. Hubbard executed a document naming Ruth Hubbard as his primary beneficiary.
The Hubbards moved to Louisiana in May of 1976. Thereafter, Mr. Hubbard's employment with Jacobs terminated in July of 1976; he was re-hired and again terminated his employment with Jacobs in 1977. In settlement of his investments with the retirement plan, Mr. Hubbard received 188 shares of Jacobs stock and a check for the accumulated cash value of his account. At the time of his demise, the shares of stock had increased to some 2044 shares, by means of stock splits over the years; no new shares were purchased after Mr. Hubbard's employment with Jacobs ended.[2]
Mr. Hubbard died on December 21, 1985. The succession proceeding was instituted September 22, 1998. Subsequently, a dispute arose between Ruth Hubbard and Mr. Hubbard's daughters from a prior marriage over the ownership of the Jacobs stock. The daughters filed a petition to be put in possession of Mr. Hubbard's separate property, namely, the Jacobs stock. After hearing the matter on November 16, 1999, the trial judge rendered judgment in favor of Mr. Hubbard's daughters, recognizing them as the sole owners of the Jacobs stock. From that judgment, Ruth Hubbard appeals, urging the following assignments of error:
(1) The Trial Court erred in failing to adjudicate Ruth V. Hubbard as the owner of 100% of the Jacobs Engineering Group, Inc. stock pursuant to the "Multiple Beneficiary Designation" introduced into evidence as "H-2";
(2) Alternatively, the Trial Court erred in holding that Florida laws, and particularly Florida Statute Sections 731.011 and 732.102, "have no bearing on this issue", i.e. the ownership of the stock.

DISCUSSION
Appellant urges this court to hold that since the shares of stock in question were the assets of the retirement plan, Mr. Hubbard's beneficiary designation should govern. In support of this position, the original beneficiary designation form executed by Mr. Hubbard was submitted into *1076 evidence before the trial court. This form states, "1, a Participant in the Jacobs Engineering Co. Thrift Savings Retirement Plan, hereby designate the person or persons whose names appear below as Beneficiary or Beneficiaries to receive, in the event of my death, if they are then living, amounts credited to my Accounts under said Plan." Ruth V. Hubbard was named thereunder as primary beneficiary, entitled to a one hundred percent share. Mr. Hubbard named his daughters, along with his step-daughters, and step-grandsons as contingent beneficiaries, each entitled to a contingent twenty percent or less share.
Also filed into evidence was a memorandum to Jacobs employees outlining the thrift savings/retirement plan provisions. This memorandum states who is eligible for participation in the plan: "Employees of Companies to which the Plan applies, or is extended, who have completed six months of service ...." The plan further provides for distribution of account assets upon termination of employment with Jacobs: "If you resign or are dismissed or laid off, you will forfeit any Company contributions which, at that point in time, are not vested. You will receive the remaining value of your accounts in a cash distribution." The plan memorandum further states, "You may designate a beneficiary for the moneys credited to your Plan accounts and you may change your beneficiary at any time." (Emphasis added.)
The prospectus for the retirement plan was also introduced into evidence. It also provides that only employees are eligible for participation in the plan. The prospectus further provides for a distribution of contributions upon termination of employment as follows:

Resignation or Dismissal. If a Participant ceases to become a Participant by reason of his electing not to make contributions to the Plan for a period of five years or if he ceases to be an employee of a Participating Employer or any subsidiary of Group for any reason other than retirement, disability or death, then the Participant will receive all Units representing his own contributions and that portion of the contributions of the Participating Employer which have become vested in him as described above under "Who May Participate in the Plan?Vesting".
The plan provisions make it clear that only an employee is eligible to participate in the plan.
The testimony presented in this case established that upon termination of Mr. Hubbard's employment with Jacobs, he received a check for the cash accumulated in his account and the shares of stock at issue herein. The retirement account was effectively closed at that time. The beneficiary designation executed in conjunction therewith could have no effect on assets maintained outside of the account. Thus, the beneficiary designation can have no effect on the shares of stock that Mr. Hubbard personally received on the closing of his retirement account and were subsequently held by him.
We next examine what law should be applied to determine how the shares of stock devolve in Mr. Hubbard's intestate succession. In deciding to apply Florida law to the matter, the trial court relied on La.C.C. art. 3523, which provides as follows:
Except as otherwise provided in this Title, the rights and obligations of spouses with regard to movables, wherever situated, acquired by either spouse during marriage are governed by the law of the domicile of the acquiring spouse at the time of acquisition.
(Emphasis added.) Our review of the choice of law provisions leads us to believe that La.C.C. art. 3526 is the more relevant article; it provides:

*1077 Upon termination of the community, or dissolution by death or by divorce of the marriage of spouses either of whom is domiciled in this state, their respective rights and obligations with regard to immovables situated in this state and movables, wherever situated, that were acquired during the marriage by either spouse while domiciled in another state shall be determined as follows:
(1) Property that is classified as community property under the law of this state shall be treated as community property under that law; and
(2) Property that is not classified as community property under the law of this state shall be treated as the separate property of the acquiring spouse. However, the other spouse shall be entitled, in value only, to the same rights with regard to this property as would be granted by the law of the state in which the acquiring spouse was domiciled at the time of acquisition.
(Emphasis added.)
The comments to article 3523 expressly state that one of the exceptions to that article is found in article 3526. La.C.C. art. 3523, Comment (a). Similarly, the comments to article 3526 state that article 3526 derogates from the general principle of article 3523, and "prevails over it, being more specific." La.C.C. art. 3526, Comment (a). The application of article 3526 is further explained by comments (b) through (f) as follows:
(b) Classification of property. This Article envisions two separate mental steps. The first step is the classification of the property that falls within the scope of the Article as either "community property" or "separate property". This classification is to be conducted "under the law of this state", that is, the substantive rules Louisiana has devised for cases that do not contain any foreign elements. See, e.g., La.Civ.Code Arts. 2325-2437 (Rev.1979). In other words, the classification is to be conducted as if the spouses were domiciled in Louisiana at all critical times. Aside from logistical simplicity, one reason for applying Louisiana law here is to avoid the anomaly of having to apply the law of a another state (e.g., a common-law separate-property state) to matters of classification when that state might not have any comparable scheme for classifying property.
(c) Distribution of property. The second step is the determination of the respective rights of spouses with regard to the property that has been classified in the first step. For brevity's sake this step is called "distribution", although in actuality the property may not always be distributed. Although, as explained above, the classification of the property is governed exclusively by Louisiana law, the distribution of the property may be governed either by Louisiana law or by the law of another state. Subparagraph (1) applies to property that is classified as community property under Louisiana classification law and calls for the application of the same law for distributing that property at Louisiana's 50:50 ratio between the spouses or their successors. Subparagraph (2) applies to property classified as separate property under Louisiana law and calls for the application of the distribution law of the state where the acquiring spouse was domiciled at the time of acquisition. The reason for this difference is explained below.
(d) Subparagraph (1): "Quasi-Community". Subparagraph (1) attempts to secure for the non-acquiring, formerly non-Louisianian, spouse the same protection as is provided by Louisiana substantive law for similarly situated Louisiana spouses. This scheme is similar to what is known in other states as the *1078 scheme of "quasi-community". One difference is that this provision is applicable to both divorce and death situations, whereas, with the exception of Idaho and California, other community property states confine their scheme to divorce situations only. See also § 17, 18 of the Uniform Marital Property Act. Another and more important difference stems from the fact that the quasi-community rule of subparagraph (1) is supplemented by the rule of subparagraph (2), which is explained infra.

(e) Subparagraph (2). Subparagraph (2) of this Article applies only to property that is not classified as community property under Louisiana substantive law. As long as the marriage lasts, this property is governed by the law designated by Article 3524 for immovables, and by Article 3523 for movables. Upon dissolution of the marriage, subparagraph (2) of this Article becomes operative and calls for the application of the distribution law of the state in which the acquiring spouse was domiciled at the time of acquisition. For similar results under the jurisprudence, see Schueler v. Schueler, 460 So.2d 1120 (La.App. 2d Cir.1985); Gilbert v. Gilbert, 442 So.2d 1330 (La.App. 3rd Cir.1983). See also Hughes v. Hughes, 91 N.M. 339, 573 P.2d 1194 (1978).
(f) The objective of subparagraph (2) is the same as that of subparagraph (1), namely to afford some protection to the non-acquiring spouse. Subparagraph (1) accomplishes this objective through the application of the community-property law of this state. Subparagraph (2) accomplishes the same objective through the application of the distribution laws of the domicile of the acquiring spouse at the time of acquisition. The co-existence of the two subparagraphs might create an impression of overprotection of the non-acquiring spouse. For a critique on exactly this point, see Reppy, "Louisiana's Proposed `Hybrid' Quasi-Community Property Statute Could Cause Unfairness", 13(3) Comm.Prop.J. 1 (1986). For a response, see Symeonides, "In Search of New Choice-of-Law Solutions to Some Marital Property Problems of Migrant Spouses: A Response to the Critics", 13(3) Comm. Prop.J. 11 (1986).
Article 3526, as applied to the factual situation presented in this case, directs the district court to evaluate movable property, with respect to its classification as community or separate property, under the law of this state. The comments to article 3526 acknowledge such an approach is in derogation of article 3523, and indicate that the derogation is intended to protect the non-acquiring spouse.
In the face of such an express directive, the courts have no choice but to evaluate the shares of Jacobs stock, at issue in this case, in accordance with Louisiana law. Community property is defined by La.C.C. art. 2338 as comprising: "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property." In contrast, separate property is defined by La.C.C. art. 2341 as comprising: "property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation *1079 to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime." Things in the possession of a spouse during the existence of a community property regime are presumed to be community, though either spouse may prove that they are separate property. La.C.C. art. 2340.
Since the Jacobs stock was purchased with Mr. Hubbard's wages, which are considered community property under La.C.C. art. 2338, the stock must also be classified as community property. Therefore, the intestate succession provisions relative to community property, La.C.C. arts. 888-890, should be applied to determine the ownership of the Jacobs stock. The application of these provisions result in the inheritance by Mr. Hubbard's children of a one-half share of the Jacobs stock, with Mrs. Ruth Hubbard retaining a one-half share, as her community property interest in the community asset.
We reject the argument of appellees that application of the aforementioned conflict of laws provisions affects their property rights, which vested prior to the enactment of the law. As noted hereinabove, Mr. Hubbard died in 1985; however, the instant succession proceeding was not instituted until 1998. In the interim, 1991 La. Acts., No. 923 was enacted. Section 4 of Act 923 provides, "This Act shall become effective on January 1, 1992, and shall apply to all actions filed after that date." See Kanz v. Wilson, 96-0882, p. 10 (La.App. 1st Cir. 11/17/97), 703 So.2d 1331, 1337.
Nevertheless, even where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Morial v. Smith & Wesson Corporation, XXXX-XXXX, p. 9 (La.4/3/01), 785 So.2d 1, 10, cert. denied, ___ U.S. ___, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001). Because we find that the result would have been the same under the conflict of laws considerations in effect prior to the enactment of Act 923, and consequently, appellees had no greater rights thereunder than under current law, application of La. C.C. art. 3526 does not disturb any vested rights of appellees and is correctly applied herein.
Prior to the enactment of La. C.C. arts. 3515 et seq.,[3] articles 14 and 15 provided the relevant conflict of laws provisions in Louisiana and provided, in pertinent part, as follows:[4]
Art. 14. Territorial scope over persons and property The law is obligatory upon all inhabitants of the state indiscriminately; the foreigner, whilst residing in the state, and his property within its limits, are subject to the laws of the state.
Art. 15. Choice of law
* * *
Immovables situated in this state, with their accessories, acquired by a *1080 married person, are subject to the legal regime of acquets and gains regardless of his domicile. Movables wherever situated, are subject to the law of the domicile of the acquiring spouse.

(Emphasis added.)
In arguing to this court "the law of the domicile of the acquiring spouse," both appellant and appellees agree that Mr. Hubbard was domiciled in Florida at the time he first acquired the Jacobs stock. Appellant and appellees further agree that Florida is not a community property law jurisdiction, and that the Jacobs stock would be classified separate property under Florida law. Appellees then argue, in support of the trial court decision, that Louisiana succession law is applied to this property, in accordance with its Florida classification as separate property of the decedent, to determine the disposition of the property in Mr. Hubbard's succession. In contrast, appellant contends Florida succession law would more fairly allocate one-half of this asset to her, as a surviving spouse, and one-half to the decadent's children.[5] We agree that appellant's approach is correct.
Because the direction of former La. C.C. art. 15, that movables are subject to "the law of the domicile" of the acquiring spouse, is without definition in its scope, exactly which provisions of the law of a foreign jurisdiction are applicable in a dispute is a matter that must be determined by the court. To classify property as either separate or community under the law of another state, where the acquiring spouse was domiciled at the time an item of property was acquired, without also applying the law of that state to determine the distribution or division of that property, either at the time of divorce or death of the acquiring spouse, would fail to take into account crucial policy decisions of that state, particularly in an equitable distribution jurisdiction such as Florida.
Such an inequity was recognized in Gilbert v. Gilbert, 442 So.2d 1330 (La.App. 3rd Cir.1983), writ denied, 445 So.2d 1231 (La.1984). Although Gilbert involved the division of a retirement benefit upon dissolution of the marriage, the rationale is applicable to the instant dispute.
In Gilbert, the parties lived during the pertinent period of their marriage in Georgia. While domiciled in Georgia, the husband acquired a disability retirement pension from his employer and began receiving benefits. Afterwards, the couple moved to Louisiana and divorced. In resolving that Georgia law was applicable, the appellate court in Gilbert then considered "how much Georgia law to apply." The court acknowledged that while Georgia is a separate (non-community) property state, to offset the inequities that often result in a separate property regime, the Georgia Supreme Court had adopted the theory of "equitable distribution" in distributing a couple's assets after the dissolution of their marriage. In essence, the doctrine allowed a court to award property to one spouse even when it was held in the name of the other spouse. The equitable distribution upon divorce was implemented to prevent any inequities caused by the lack of a community property regime. The Gilbert court went on to recognize that since the divorce proceedings were conducted in Louisiana, and normally Louisiana matrimonial regime laws would apply, the application of Georgia property law, which is a separate property regime, and Louisiana matrimonial regime law, which has no equitable distribution doctrine, would have the effect of rendering Mr. Gilbert the separate owner of the benefits *1081 at issue. The court found such a result inequitable since Mr. Gilbert would obtain the right to the entire benefits in Louisiana, a right that would not have been available to him in Georgia, the location of the matrimonial domicile at the time of his employment with the Civil Service and thus, the time of the vesting of rights in the benefits. The Gilbert court went on to reason that because the Supreme Court of Georgia created the equitable distribution doctrine to offset the inequities that often arise in a separate property regime, and considering the way the two doctrines are so intricately related, the court concluded that Georgia's separate property law could not be applied without also applying Georgia's equitable distribution doctrine. 442 So.2d at 1333-34.
Likewise, we find that it would be inequitable to apply Florida property law to classify the property in the instant case and Louisiana succession law to distribute or divide the property upon the death of the acquiring spouse. If Florida law were applied in both instances, Mrs. Hubbard would be entitled to a one-half share of the Jacobs stock. If Louisiana law were applied in both instances, Mrs. Hubbard would be entitled to a one-half share of the Jacobs stock. Thus, under the particular facts of this case, the patchwork application of the laws of different states produces an anomaly that would not otherwise have occurred if the laws of either state were applied in toto. We believe such an inequitable result was not contemplated in the establishment of conflict of laws provisions. To the contrary, equity dictates that under these circumstances, "the law of the domicile" of the acquiring spouse to be applied is both the Florida law classifying the property, as well as, the Florida law providing for the distribution of this property upon the death of the acquiring spouse. The application of both provisions of Florida law is necessary to fully reflect the intent of that state with respect to the ownership of assets acquired by spouses during their marriage.
Therefore, this court finds that if Florida law were required to be applied to classify the Jacobs stock, the Florida succession laws should also be applied to direct its distribution, resulting in an award of one-half of the Jacobs stock to Mrs. Hubbard and one-half of the stock to the children of Mr. Hubbard.
Consequently, the application of the former conflict of laws provisions would not produce a different result than the application of La.C.C. art. 3526. Therefore, the application of La.C.C. art. 3526 to the instant proceeding, filed after its effective date, as set forth hereinabove, does in no way alter the vested rights of appellees.

CONCLUSION
Accordingly, the judgment of the trial court placing Mr. Hubbard's children in possession of one hundred percent of the Jacobs stock is reversed, and the matter is remanded for further proceedings consistent with the foregoing opinion. All costs of this appeal are assessed to appellees herein.
REVERSED AND REMANDED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The stock certificates have been deposited into the registry of the trial court, and the parties do not dispute that they stand in the name of John W. Hubbard alone.
[3] Articles 3515 et seq. were originally enacted as articles 14 through 49 of the Civil Code, but were redesignated under the authority of the Louisiana State Law Institute as articles 3515 through 3549 to form Book IVConflict of Laws. La.C.C. art. 14, Editor's note.
[4] Articles 14 and 15 were originally enacted as articles 9 and 10 of the Civil Code, but were redesignated by 1987 La. Acts, No. 124, § 2, effective January 1, 1988.
[5] Florida Statutes, § 732.102 provides, "If there are surviving lineal descendants, one or more of whom are not lineal descendants of the surviving spouse, [the Intestate share of the surviving spouse is] one-half of the intestate estate."