STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2025 CA 0070

MICHELLE NICOLE LEBLANC

VERSUS

LUKE GERALD GUILLOT

Judgment Rendered: **AUG 0 5 2025**

* * * * *

On Appeal from the
The Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. F227545, Division D

Honorable Kyle Russ, Judge Presiding

* * * * *

Brienne M. Griffin
Baton Rouge, LA

Attorney for Plaintiff-Appellee,
Michelle Nicole Leblanc


Louis J. Consenza
Gonzales, LA

Attorney for Defendant-Appellant,
Luke Gerald Guillot

* * * * *

**BEFORE:  McCLENDON, C.J., LANIER AND BALFOUR, JJ.**

**BALFOUR, J.**

This is an appeal of a judgment partitioning the community property of the defendant-appellant, Luke Gerald Guillot, and the plaintiff-appellee, Michelle Nicole LeBlanc. Guillot appeals the portion of the partition judgment awarding LeBlanc reimbursement for Guillot's payment of pre-marital loans. For the following reasons, we reverse in part and affirm in part as amended.

## FACTS AND PROCEDURAL HISTORY

The facts of this matter are undisputed. On July 1, 2014, LeBlanc and Guillot began cohabitating in Florida without the benefit of marriage. On May 23, 2015, LeBlanc and Guillot were married in Baton Rouge, Louisiana, where their families lived. Following their honeymoon, LeBlanc and Guillot returned to Florida and made it their domicile, living in a home they purchased together before their marriage. While married to LeBlanc and living in Florida, Guillot paid off three loans that were made to him before the parties married: 1) a purchase money loan for a 2012 Tahoe; 2) a Campus Federal Credit Union Student Loan; and 3) a consolidated loan with the United States Department of Education (collectively the "pre-marital loans"). The total amount paid to discharge the pre-marital loans was $513,558. In August 2020, LeBlanc and Guillot moved to Baton Rouge. LeBlanc and Guillot did not enter into a matrimonial agreement at any point after moving to Louisiana.

On November 19, 2021, LeBlanc filed for divorce in East Baton Rouge Parish. On December 27, 2022, LeBlanc filed a petition to partition the community property. The detailed descriptive list attached to LeBlanc's partition petition lists reimbursement claims, including for the pre-marital loans paid during LeBlanc and Guillot's marriage. On January 11, 2023, the trial court signed a judgment of divorce.

2

On September 20, 2023, Guillot filed a motion for summary judgment asserting that LeBlanc is not entitled to reimbursement for Guillot's payment of the pre-marital loans. Guillot noted that Florida is not a community property state and therefore, he did not use community property funds when he paid off the pre-marital loans. LeBlanc opposed Guillot's motion for summary judgment, arguing she is entitled to reimbursement of the pre-marital loans pursuant to La. C.C. art. 2364 because Guillot used his employment wages to pay the pre-marital loans. On February 26, 2024, the trial court signed a written judgment denying Guillot's motion for summary judgment.

Following a trial on the merits, on July 18, 2024, the trial court signed a written judgment partitioning the community. As is relevant to this appeal, the trial court awarded LeBlanc $256,780 for reimbursement of the pre-marital loans.[1] Guillot appeals, arguing the trial court erred as a matter of law by awarding LeBlanc reimbursement for the pre-marital loans.[2]

## LAW AND DISCUSSION

The issue before this Court is whether a spouse is entitled to reimbursement for the payment of pre-marital debt with funds earned during the marriage while the spouses were domiciled in a non-community property state when the spouses thereafter move to Louisiana and establish a community property regime. As discussed, the facts of this matter are undisputed, and therefore, we consider this legal issue under a *de novo* standard of review, under which the trial court's legal conclusions are not entitled to deference. *See Cawley v. National Fire & Marine Ins. Co.*, 2010-2095 (La. App. 1 Cir. 5/6/11), 65 So. 3d 235, 237.

---

[1] Considering the pre-marital loans, along with other reimbursement amounts awarded that are not at issue in this appeal, Guillot was ordered to pay LeBlanc a total equalizing payment of $308,210.42.

[2] Guillot also argues on appeal that the trial court erred by denying his motion for summary judgment on the issue of LeBlanc's right to reimbursement of the pre-marital loans.

"The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage." La. C.C. art. 2334. Spouses not domiciled in Louisiana at the time of their marriage become subject to the community property from the moment they become Louisiana domiciliaries, unless they enter into a matrimonial agreement[3] within one year after acquiring a domicile in this state. *See* Comment (b) to La. C.C. art. 2334; La. C.C. art. 2329. As discussed, LeBlanc and Guillot moved to Louisiana in August 2020 and did not enter into a matrimonial agreement. Thus, LeBlanc and Guillot became subject to a community property regime when they established their domicile in Louisiana in August 2020.

Louisiana Civil Code article 2338 defines community property as including "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse[.]" Thus, wages earned by a spouse during the legal regime would be considered community property under La. C.C. art. 2338. However, the wages earned by Guillot that were used to pay the pre-marital loans were acquired in Florida, prior to the establishment of the community property regime.[4]

An obligation incurred by a spouse prior to the establishment of a community property regime is a separate obligation. La. C.C. art. 2363. The pre-marital loans were incurred by Guillot prior to the community property regime, but were also satisfied prior to the establishment of the community property regime.

If community property has been used during the existence of the community property regime or former community property has been used thereafter to satisfy a separate obligation of a spouse, then upon termination of the community the other

---

[3] "A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime." La. C.C. art. 2328.

[4] Florida is not a community property state. Florida courts utilize an equitable distribution scheme to divide the marital assets and liabilities in a divorce proceeding. *See* Fla. Stat. Ann. § 61.075.

spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. La. C.C. art. 2364 and its Comment (a). The burden of proof is on the party claiming reimbursement. *Corkern v. Corkern*, 2005-2297 (La. App. 1 Cir. 11/3/06), 950 So. 2d 780, 787, *writ denied*, 2006-2844 (La. 2/2/07), 948 So. 2d 1083. As discussed, Guillot incurred and satisfied the pre-marital loans in Florida, prior to the establishment of the community property regime. Therefore, pursuant to the express language of La. C.C. art. 2364, LeBlanc would not be entitled to reimbursement of the pre-marital loans because they were not paid during the existence of the community property regime.

In finding LeBlanc was entitled to reimbursement of the pre-marital loans, the trial court relied upon La. C.C. art. 3526, the Louisiana conflict of laws provision applicable to property acquired by a spouse while domiciled in another state. Under La. C.C. art. 3526, the trial court determined that the pre-marital loans are Guillot's separate obligation and Guillot's wages used to pay the pre-marital loans are community property. Guillot argues the trial court erred by finding La. C.C. art. 3526 applies because Guillot's wages used to pay the pre-marital loans are no longer in existence, and therefore, cannot be considered a "movable" subject to classification under La. C.C. art. 3526. We agree.

Louisiana Civil Code article 3526 states:

Upon termination of the community, or dissolution by death or by divorce of the marriage of spouses either of whom is domiciled in this state, their respective rights and obligations with regard to immovables situated in this state and movables, wherever situated, that were acquired during the marriage by either spouse while domiciled in another state shall be determined as follows:

(1) Property that is classified as community property under the law of this state shall be treated as community property under that law; and

(2) Property that is not classified as community property under the law of this state shall be treated as the separate property of the acquiring spouse. However, the other spouse shall be entitled, in value only, to the same rights with regard to this property as would be granted by the

5

law of the state in which the acquiring spouse was domiciled at the time of acquisition.

Comment (a) to La. C.C. art. 3526 notes that the article only applies to movable or immovable property acquired during the marriage by either spouse while domiciled in another state.[5] Comment (b) to La. C.C. art. 3526 explains that the article "envisions two separate mental steps[,]" the first of which is to classify the property that falls within the article as either community property or separate property under Louisiana law. The second step requires a determination of the respective rights of the spouses with regard to the property that has been classified in the first step. *See* Comment (c) to La. C.C. art. 3526. Comment (d) to La. C.C. art. 3526 notes that subparagraph (1) of the article creates a "quasi-community" and "attempts to secure for the non-acquiring, formerly non-Louisianan, spouse the same protection as is provided by Louisiana substantive law for similarly situated Louisiana spouses."

LeBlanc argues La. C.C. art. 3526 provides for "retroactive classification" of movable property that is no longer in existence. In support of her argument, she cites Comment (a) to La. C.C. art. 3523, the more general conflicts of law provision that provides that the rights and obligations of spouses with regard to movables, wherever situated, acquired by either spouse during the marriage are governed by the law of the domicile of the spouse at the time of acquisition. Comment (a) to La. C.C. art. 3523 explains that the article "codifies the principle of the mutability of the matrimonial regime, that is, the notion that the matrimonial regime changes when the matrimonial domicile is moved from one state to another." Comment (a) to La. C.C. art. 3523 notes that the article is consistent with "partial or prospective mutability." LeBlanc points out that Comment (a) to La. C.C. art. 3523 thereafter

---

[5] If movable property is acquired by a spouse while domiciled in Louisiana, then the more general conflicts of law provision, La. C.C. art. 3523, applies. *See* Comment (a) to La. C.C. art. 3526.

states that La. C.C. art. 3526(1) "essentially authorizes a total or retrospective mutability for the cases falling within the scope of that subparagraph."

LeBlanc cites *In re Succession of Hubbard*, 2000-2412 (La. App. 1 Cir. 12/28/01), 803 So. 2d 1074 in support of her argument that a retroactive classification of movables under La. C.C. art. 3526 is appropriate in this case. In *In re Succession of Hubbard*, John and Ruth Hubbard were married in Oklahoma, then moved to Florida where Mr. Hubbard enrolled in a retirement plan through his employer. Thereafter, the Hubbards moved to Louisiana and Mr. Hubbard's employment was terminated. Mr. Hubbard received a settlement for his retirement plan, which included shares of stock and a check for the accumulated cash value of his account. Thereafter, Mr. Hubbard died, and a dispute arose between Mrs. Hubbard and Mr. Hubbard's daughters from a previous marriage over the ownership of the stock Mr. Hubbard received for his retirement plan. Mr. Hubbard's daughters argued the stock was Mr. Hubbard's separate property. The trial court, applying Florida law, rendered judgment recognizing Mr. Hubbard's daughters as the sole owners of the stock. *Id.* at 1075.

On appeal, this Court found that the trial court erred by using La. C.C. art. 3523 to apply Florida law and should have applied the more specific and relevant choice of law provision, La. C.C. art. 3526. *In re Succession of Hubbard*, 803 So. 2d at 1076. This Court explained that pursuant to La. C.C. art. 3526, the trial court should have evaluated the stock, a movable, under Louisiana law. *In re Succession of Hubbard*, 803 So. 2d at 1078. Applying Louisiana law, this Court explained that the stock, which was purchased with Mr. Hubbard's wages, was considered community property under La. C.C. art. 2338. Therefore, application of the intestate succession provisions relative to community property, La. C.C. arts. 888-890, resulted in the inheritance by Mr. Hubbard's children of a one-half share of the stock,

7

with Mrs. Hubbard retaining a one-half share, as her community property interest in the community property asset. *In re Succession of Hubbard*, 803 So. 2d at 1079.

We find *In re Succession of Hubbard* distinguishable from the instant case because that case involved an *existing* incorporeal movable, the stock, which was subject to classification under La. C.C. art. 3526. In the case *sub judice*, there is no existing movable subject to classification under La. C.C. art. 3526 because Guillot's wages used to pay the pre-marital loans have been expended. As noted, La. C.C. art. 3526 applies to movables, wherever situated, that were acquired during the marriage by either spouse while domiciled in another state. The phrase "retrospective mutability" as used in Comment (a) to La. C.C. art. 3523 to describe the effect of La. C.C. art. 3526 does not support LeBlanc's argument that La. C.C. art. 3526 permits a retroactive classification of movables no longer in existence. The purpose of La. C.C. art. 3526 is to retroactively apply the community property regime to immovable or movable property that was acquired by a spouse during the marriage while domiciled in another state. As there is no existing property at issue in this matter, there can be no classification of movable property under La. C.C. art. 3526. Therefore, the trial court erred by applying La. C.C. art. 3526(1) to Guillot's wages used to pay the pre-marital loans. We also find that the trial court erred by applying La. C.C. art. 3526(2) to classify the pre-marital loans as Guillot's separate obligation because, even if the pre-marital loans had not been extinguished prior to the community property regime, La. C.C. art. 3526(2) only allows classification of property, not an obligation. Accordingly, we find that LeBlanc failed to meet her burden of proving her reimbursement claims for the pre-marital loans under La. C.C. art. 2364.

## CONCLUSION

For the foregoing reasons, we reverse the portion of the trial court's July 18, 2024 partition judgment awarding Michelle Nicole LeBlanc $256,780 in

8

reimbursement for Luke Gerald Guillot's pre-marital loans. Accordingly, we amend the July 18, 2024 judgment to provide that Michelle Nicole LeBlanc is to receive a recalculated award of $20,978 in reimbursement, and Luke Gerald Guillot is ordered to pay Michelle Nicole LeBlanc a recalculated equalizing payment in the amount of $51,430.42. In all other respects, we affirm the July 18, 2024 partition judgment. Costs of this appeal are assessed to the appellee, Michelle Nicole LeBlanc.

**JUDGMENT REVERSED IN PART AND AFFIRMED IN PART AS AMENDED.**